# DISTRICT OF COLUMBIA

*v.*

# WILCOX.

---

Pleading and Practice; Special Damages; Damages; Death by Wrongful Act; Charge to Jury; New Trial.

1. In an action brought under the Act of Congress of Feb. 17, 1895 (23 Stat. 307), to recover damages for death by wrongful act, it is not necessary for the plaintiff to allege special pecuniary loss sustained by reason of the death of the deceased.

2. In such a case a general allegation of damages will be sufficient, under which evidence can be introduced of all damages which naturally and necessarily would result from the death of the deceased.

3. An error of a trial court in admitting immaterial evidence will not be ground for reversal, where the charge to the jury is full and clear and furnishes a correct guide to the correct finding by the jury.

4. Where an alleged error, for which the judgment of a trial court is sought to be reversed, did not prejudice and could not have prejudiced the rights of the party against whom it was made, the judgment will not be reversed. Therefore, in an action, under the statute, to recover damages sustained by a niece for the death of her uncle, where it appeared that there was a nephew living, a ruling by the trial court restricting the right of the plaintiff administratrix to recover to the damages sustained by the neice, irrespective of any claim by the nephew, is not ground for reversal at the instance of the defendant.

5. It is not error for a trial court to refuse to give an extended series of instructions, even though some of them may be correct in the propositions of law which they present, if the law arising upon the evidence is given fully and correctly to the jury in the charge.

6. The granting or refusal to grant a new trial is not the proper subject of a bill of exception, and the ruling of the trial court on such motion cannot be reviewed by this court.

No. 276.  Submitted June 5, 1894.  Decided September 20, 1894.

Hearing on a bill of exceptions by the defendant in an action for damages.  *Judgment affirmed.*

## Statement of the Case.

The declaration in this case, filed February 4, 1891, was as follows:

" Mary R. Wilcox, administratrix of the estate of Cadmus M. Wilcox, deceased, having duly qualified as such in the Supreme Court of the District of Columbia, holding a special term for Orphans' Court business, sues the defendant, the said District of Columbia, for money due and payable by the defendant to the plaintiff:

" For that whereas, on the day hereinafter named and for a long time prior thereto, there were and still are certain common and public highways in the city of Washington, District of Columbia, called respectively G street N. W. and 14th street N. W., which are and were used as such highways by the good citizens of the United States for passing and repassing over the same on foot as well as otherwise.

"And whereas the said defendant, well knowing the premises, was bound to keep said highways and both of them in such condition as to render it safe for passage and transit aforesaid on and over and across the same, yet, nevertheless, the plaintiff alleges that heretofore, to wit, on the 26th day of November, A. D. 1890, the said highways, at the intersection thereof, were out of repair and in a dangerous and unsafe condition by reason of the gross negligence of the defendant, of all of which the defendant had notice; yet, nevertheless, to wit, on the day and year last mentioned the defendant, not performing and regarding its duty as aforesaid, wrongfully and negligently permitted and allowed the said public highways or streets aforesaid, at the intersection thereof, to be and remain out of repair and in a danger-

ous and unsafe condition, unguarded and without fixing or placing or causing to be fixed or placed any proper light or lights, signal or signals, barricades, or other warning at or near certain deep and dangerous cuts or excavations, four in number, running on and with G street, across the intersection of the street with the said 14th street, along and in said G street, for the placing therein of rails of a double line of street railway thereon being constructed, to denote or show that the same was so there as aforesaid, and made no effort to secure the same against accidents to persons using and enjoying the said highways or to warn persons passing on said common or public highways or streets, at the intersection thereof, of the existence of said cuts and obstructions; by means of and in consequence of which gross negligence and failure of the defendant to perform its duty in that respect aforesaid the plaintiff's intestate, the said Cadmus M. Wilcox, then and there, to wit, on the day and year aforesaid, at about six o'clock in the evening of the said day, while walking moderately and carefully on said 14th street from its intersection with New York avenue south towards F street and across G street, stepped his foot into the said cut or excavation lying close to the west side of said G street, which was then and there and for a long time had been in the street aforesaid, at the place aforesaid, left open, unguarded, and unprotected, and without lights in any manner whatsoever, as aforesaid, through the gross negligence and default of the defendant, whereby the plaintiff's intestate was thrown down to and upon the ground and into the said other excavation, cut or trench, parallel with the one into which the said plaintiff's intestate had stepped, which said cut or trench was then and there and for a long time had been in the street aforesaid, at the place aforesaid, left open, unguarded, and unprotected in any manner whatsoever, as aforesaid, through the gross negligence and default of the defendant, whereby the plaintiff's said intestate received a blow on the side of the head, bruising and lacer-

ating the same, whereby and with such force as to dismember and rupture a bloodvessel over the brain of the said intestate, by reason of which fall and blow the said intestate, Cadmus M. Wilcox, then and there received mortal injuries, of which he lingered and, lingering, shortly thereafter, to wit, on the 2d day of December, 1890, died of said mortal injury; that the said accident to the said Cadmus M. Wilcox did not result from any fault or negligence of the said Cadmus M. Wilcox, but from the wrongful acts of the said defendants, its agents and servants; that said wrongful acts and negligence and default of the said defendant, its agents and servants, was such as would, if death had not resulted, have entitled the said Cadmus M. Wilcox to maintain an action against and recover damages in respect thereof, whereby a right of action hath accrued to the plaintiff, as administratrix aforesaid, in pursuance of the act of Congress of February 17th, 1885, in such cases made and provided, and in force at the time of the alleged injury and unrepealed; and the plaintiff further says that the said Cadmus M. Wilcox died intestate; that he left no widow or children, but left surviving him as his sole next of kin his nephew, Andrew D. Wilcox, and his niece, Mary R. Wilcox, for whose use and benefit this suit is brought; and at the time of his death the said Cadmus M. Wilcox held a position in the service of the United States that paid him annually the sum of $1,800, and that the said Cadmus M. Wilcox, during his life, did not receive or recover any damages whatever for the injury sustained by reason of the aforesaid wrongful act, negligence, and default of the said defendant; and the plaintiff says that she is damaged by the wrongful acts, negligence, and default aforesaid of the defendant, its agents and servants, ten thousand dollars ($10,000); wherefore she brings this her suit and claims of the defendant the sum of ten thousand dollars ($10,000) damages, besides costs of suit.

"And the plaintiff sues the defendant for that whereas, on

the day hereinafter named and for a long time prior thereto, there were and still are certain common and public highways in the city of Washington, District of Columbia, called respectively G street, N. W., and 14th street, N. W., which are and were used as such highways by the good citizens of the United States for passing and repassing over the same on foot as well as otherwise.

"And whereas the said defendant, well knowing the premises, was bound to keep said highways and both of them in such condition as to render it safe for passage and transit aforesaid on and over and across the same, yet, nevertheless, the plaintiff alleges that heretofore, to wit, on the 26th day of November, A. D. 1890, the said highways, at the intersection thereof, were out of repair and in a dangerous and unsafe condition by reason of the gross negligence of the defendant, of all of which the defendant had notice; yet, nevertheless, to wit, on the day and year last mentioned, the defendant, not performing and regarding its duty as aforesaid, wrongfully and negligently permitted and allowed the said public highways or streets aforesaid, at the intersection thereof, to be and remain out of repair and in a dangerous and unsafe condition, unguarded and without fixing or placing or causing to be fixed or placed any proper light or lights, signal or signals, barricades, or other warnings at or near certain deep and dangerous cuts or excavations, four in number, running on and with G street, across the intersection of the street with the said 14th street, along and in said G street, for the placing therein of rails of a double line of street railway thereon being constructed, to denote or show that the same was so there, as aforesaid, and made no effort to secure the same against accidents to persons using and enjoying the said highways or to warn persons passing on said common or public highways or streets, at the intersection thereof, of the existence of said cuts and obstructions; by means of and in consequence of which gross negligence and failure of the defendant to perform its duty

in that respect aforesaid the plaintiff's intestate, the said Cadmus M. Wilcox, then and there, to wit, on the day and year aforesaid, at about 6 o'clock in the evening of the said day, while walking moderately and carefully on said 14th street, from its intersection with New York avenue south towards F street and across G street, stepped his foot into the said cut or excavation lying close to the west side of said G street, which was then and there and for a long time had been in the street aforesaid, at the place aforesaid, left open, unguarded, and unprotected and without lights in any manner whatsoever, as aforesaid, through the gross negligence and default of the defendant, whereby the plaintiff's intestate was thrown down to and upon the ground with great force and thereby received a blow on the side of the head, bruising and lacerating the same, whereby and with such force as to dismember and rupture a bloodvessel over the brain of the said intestate, by reason of which fall and blow the said intestate, Cadmus M. Wilcox, then and there received mortal injuries, of which he lingered and, lingering, shortly thereafter, to wit, on the 2d day of December, 1890, died of said mortal injury; that the said accident to the said Cadmus M. Wilcox did not result from any fault or negligence of the said Cadmus M. Wilcox, but from the wrongful acts of the said defendant, their agents and servants; that said wrongful acts and negligence and default of the said defendant, its agents and servants, was such as would, if death had not resulted, have entitled the said Cadmus M. Wilcox to maintain an action against and recover damages in respect thereof, whereby right of action hath accrued to the plaintiff, as administratrix aforesaid, in pursuance of the act of Congress of February 17th, 1885, in such cases made and provided, and in force at the time of the alleged injury and unrepealed; and the plaintiff further says that the said Cadmus M. Wilcox died intestate; that he left no widow or children, but left surviving him as his sole next of kin his nephew, Andrew D. Wilcox, and his

niece, Mary R. Wilcox, for whose use and benefit this suit is brought; and at the time of his death the said Cadmus M. Wilcox held a position in the service of the United States that paid him annually the sum of $1,800, and that the said Cadmus M. Wilcox, during his life, did not receive or recover any damages whatever for the injury sustained by reason of the aforesaid wrongful act, negligence, and default of the defendant; and the plaintiff says that she is damaged by the wrongful acts, negligence, and default aforesaid of the defendant, its agents and servants, ten thousand dollars ($10,000); wherefore she brings this her suit and claims of the defendant the sum of ten thousand dollars ($10,000) damages, besides costs of suit.

"And the plaintiff sues the defendant for that whereas, on the day hereinafter named and for a long time prior thereto, there were and still are certain common and public highways in the city of Washington, District of Columbia, called respectively G street N. W. and 14th street N. W., which are and were used as such highways by the good citizens of the United States for passing and repassing over the same on foot as well as otherwise.

"And whereas the said defendant, well knowing the premises, was bound to keep said highways and both of them in such condition as to render it safe for passage and transit aforesaid on and over and across the same, yet, nevertheless, the plaintiff alleges that heretofore, to wit, on the 26th day of November, A. D. 1890, the said highways, at the intersection thereof, were out of repair and in a dangerous and unsafe condition by reason of the gross negligence of the defendant, of all of which the defendant had notice; yet, nevertheless, to wit, on the day and year last mentioned, the defendant, not performing and regarding its duty as aforesaid, wrongfully and negligently permitted and allowed the said public highways or streets aforesaid, at the intersection thereof, to be and remain out of repair and in a dangerous and unsafe condition, unguarded and without fixing or

placing or causing to be fixed or placed any proper light or lights, signal or signals, barricades, or other warning at or near certain deep and dangerous cuts or excavations, four in number, running on and with G street, across the intersection of the street with the said 14th street, along and in said G street, for the placing therein of rails of a double line of street railway thereon being constructed, to denote or show that the same was so there as aforesaid, and made no effort to secure the same against accidents to persons using and enjoying the said highways or to warn persons passing on said common or public highway or streets at the intersection thereof of the existence of said cuts and obstructions; by means of and in consequence of which gross negligence and failure of the defendant to perform its duty in that respect aforesaid the plaintiff's intestate, the said Cadmus M. Wilcox, then and there, to wit, on the day and year aforesaid, at about six o'clock in the evening of the said day, while walking moderately and carefully on said 14th street from its intersection with New York avenue south towards F street and across G street, stepped his foot into the said cut or excavation lying close to the west side of said G street, which was then and there and for a long time had been in the street aforesaid, at the place aforesaid, left open, unguarded, and unprotected and without lights in any manner whatsoever, as aforesaid, through the gross negligence and default of the defendant, whereby the plaintiff's intestate was thrown down to and upon the ground with great force, and by means whereof the said Cadmus M. Wilcox was cut, bruised, maimed, and disfigured, wounded and injured about his head and face, and by reason whereof the said intestate, Cadmus M. Wilcox, then and there received mortal injuries, of which he lingered and, lingering, shortly thereafter, to wit, on the second day of November. A. D. 1890, died of said mortal injuries; that the said accident to the said Cadmus M. Wilcox did not result from any fault or negligence of the said Cadmus M. Wilcox, but from the wrongful

4 Ct. App.—7

acts of the said defendant, its agents and servants; that the said wrongful acts and negligence and default of the said defendant, its agents and servants, were such as would, if death had not resulted, have entitled the said Cadmus M. Wilcox to maintain an action against and recover damages in respect thereof, whereby right of action hath accrued to the plaintiff, as administratrix aforesaid, in pursuance of the act of Congress of February 17th, 1885, in such cases made and provided, and in force at the time of the alleged injury and unrepealed; and the plaintiff further says that the said Cadmus M. Wilcox died intestate; that he left no widow or children, but left surviving him as his sole next of kin his nephew, Andrew D. Wilcox, and his niece, Mary R. Wilcox. for whose use and benefit this suit is brought, and that at the time of his death the said Cadmus M. Wilcox held a position in the service of the United States that paid him annually the sum of $1,800, and that the said Cadmus M. Wilcox during his life did not receive or recover any damages whatever for the injury sustained by reason of the aforesaid wrongful act, negligence, and default of the said defendant; and the plaintiff says that she is damaged by the wrongful acts, negligence, and default aforesaid of the defendant, its agents and servants, ten thousand dollars ($10,000); wherefore she brings this her suit and claims of the defendant the sum of ten thousand dollars ($10,000) damages, besides costs of suit."

To this declaration the general issue was pleaded.

At the trial no prayers for instruction were submitted by the plaintiff. The following instructions were asked by the defendant:

" 1. The jury are instructed that the evidence adduced by the plaintiff is not sufficient to permit her to recover in this case, and you should return a verdict for the defendant."

Refused by the court, and exception reserved.

" 2. The jury are instructed that the facts stated in the

declaration are not sufficient to recover, and you should find for the defendant.

" 3. If the jury find from the evidence that the G street crossing, when the accident occurred, was on the evening of its occurrence sufficiently well lighted by the electric light maintained there and by lights placed on a street barricade erected near by and parallel with said crossing, and elsewhere in the immediate vicinity, to make plain and conspicuous to the view of persons exercising ordinary prudence the trenches cut across said crossing by the railway company, and that said trenches were of such width that any person exercising ordinary caution and prudence might easily step over them without danger, then it was contributory negligence on the part of the deceased if in crossing said street at said crossing he stepped into one of said trenches and was injured, even though the railway company had negligently failed to place proper guards and lights at said trenches."

Refused, and substitute to be given with charge. Exception reserved.

" 4. If the jury find from the evidence that there was at the crossing when the accident occurred an electric light of sufficient power at the time the accident occurred to light said crossing sufficiently well for its safe and convenient use by persons crossing over it when free from all obstructions, and that in addition thereto there were placed along and near said crossing and in the immediate vicinity of said railway trenches warning lights and danger signals, indicating obstructions or points of danger existing in the street at or near said crossing, whether such warning lights or danger signals had been placed there by the railway company or by others, then the deceased was bound to exercise a greater degree of prudence and caution in using said crossing than he otherwise would have been, and the jury must find that the trenches cut by the railway company were of such a dangerous character as that, with the exercise of such greater

degree of caution and prudence on the part of the deceased, he might not have avoided them and the accident which occurred to him, before it can find the defendant liable."

Refused, and substitute to be given in the charge. Exception reserved.

" 5. If the jury find from the evidence that the nephew and niece of the deceased were not prior to his death so associated with him as to be a part of his family and were not dependent upon him in whole or in part for support, they should find for the defendant."

Refused, and exception reserved.

" 6. If the jury find from the evidence that the nephew, Andrew D. Wilcox, was a man thirty-eight years of age and the niece, Mary R. Wilcox, was three years younger; that they lived with their mother, who maintained a household of her own separate and distinct from and independent of the deceased, and were not dependent upon him for support in whole or in part, no more than nominal damages could be allowed by your verdict, even if you should find for the plaintiff."

Refused, and exception reserved.

" 7. In this case there can be no allowance of damages on account of injury to the feelings of the relatives of the deceased or on account of any affection they may have had for him or he may have had for them or on account of any suffering, physical or mental, of the deceased or of their relatives. The recovery must be solely for the pecuniary injury they sustained, and, they being collateral relatives, not members of his family, their compensation must be measured by what they would have received or what it might be reasonably expected they would have received from him but for his death or what it may reasonably be concluded they were deprived of by his death.

" The jury cannot allow anything on account of his affection for his niece or of her affection for him.

" In estimating the pecuniary loss by reason of his death

the jury may consider what support or assistance he had been and was giving to these relatives (the nephew and niece) by way of support, but should not consider mere matters of social or friendly attention, even though induced by the relationship existing between the parties. The evidence must furnish you with some substantial, tangible guide by which you can determine what pecuniary loss has been sustained. It is only the pecuniary advantage derived by them from him in the way of aid in their support and maintenance and which they lost by reason of his death that you can consider in fixing the amount of damages.

"But if he had been contributing to their support that would not necessarily fix the amount of compensation, but there are other elements to be considered, viz., his age, his occupation, the probabilities as to whether he could continue, and for how long a time, to furnish aid and support, and it is only for what from all the evidence it might reasonably and fairly be determined they would have received that can be allowed by your verdict if you should find for the plaintiff."

Granted.

"8. To enable you to fix an amount as the pecuniary loss sustained by these parties it is incumbent on the plaintiff to show by the evidence that the deceased was contributing to the support and maintenance of one of them. It is not sufficient to show that he educated or contributed to the education of the niece when she was a child, nor is it sufficient to show that he occasionally took her on trips of pleasure, nor that he occasionally made her presents, without any evidence indicating the expense of such trips or the value of such presents.

"Such evidence is too vague and indefinite to form the basis of pecuniary loss."

Granted as qualified by the charge. Exception reserved as to qualification.

"9. If you find from the evidence that the deceased was

sixty-five years of age at the time of his death; that he had not been for many years engaged in any regular business on his own account; that he had been employed from time to time on a salary; that he was employed at the time of his death on a salary of $1,800 per year; that the time of his employment was limited to March 1, 1894; that at the time of his death his estate amounted to less than $350, you would not be justified in finding that these relatives would have derived anything from him by way of inheritance if his death had not occurred at the time it did.

" Under such conditions the probabilities of deriving from him anything by inheritance or on distribution of his estate are too remote and speculative to constitute the basis of an allowance in this regard."

Refused. Substitute to be given in charge. Exception reserved.

The following was the trial court's charge to the jury:

" It may be well, in the first instance, to give you some explanation of the attitude of the parties in this case. The law devolves upon the District of Columbia the general obligation to keep the public streets in a safe condition. If the authorities of the District desire to prosecute any work of public improvement which involves a change in the surface of the street or excavations that may be dangerous, and so forth, their duty is to guard them so as to exclude all danger to life and limb of the citizen. If they neglect that duty they are responsible in damages for the consequences. The District authorities have not only no right themselves to create a dangerous condition in the public streets, but they have no right to allow anybody else to do so.

" It is necessary, as counsel have told you, that works of public improvement like street railroads should be constructed, and they are always constructed, under a permit from the municipal authorities, but the municipal authorities are responsible for the proper conduct of that work. If these parties or if private individuals create a dangerous condi-

tion in the streets and injury results, the party injured has an action against both the party immediately causing the damage and against the District of Columbia, which is responsible for the safe condition of the streets. If, in an action against the District of Columbia under those circumstances, a judgment for damages is recovered, then the District has the right to recover the money back again from the party whose neglect was the immediate proximate cause of the injury.

" In this case it is not claimed on the part of the plaintiff that the death of Gen. Wilcox was due directly to any negligence on the part of any officers of the District of Columbia; but it is said that the District issued its permit to the Eckington Railway Company to lay these tracks upon G street, and that company again contracted with the Cranford Paving Company to do the excavation and filling that was necessary for that purpose, and that the neglect of one or both of these companies was the proximate cause of the injury; but the District is responsible, nevertheless, for it in the first instance, and may be sued in the first instance; and if the District shall be found by you to be responsible and should have to pay damages for it, they would have the right to recover against one or both of these companies.

" Another rule of our practice is that if a party who is the immediate cause of an injury is notified by the party liable in the first instance to come in and defend the action, then a judgment against the District would be conclusive against them. In this case if the injury was occasioned by the neglect of one or the other of these parties or corporations it would be conclusive against them in a suit brought over by the District against them. That notice virtually makes them a party to this suit, and the effect of your judgment and verdict upon it, founded upon the alleged negligence of one of these companies, would be conclusive against them when the District sues them, if it has to pay damages. That

will explain to you the presence of these parties in this suit by their counsel.

" But if anybody is responsible for this injury in the present case your verdict will have to be rendered against the District of Columbia alone.

"You have heard it stated by counsel that before the year 1885 nobody had the right to bring an action against any one else for causing the death of a person.  Even a child dependent for its maintenance upon its parents could not sue anybody who had occasioned the death of that parent, nor could a wife sue for the occasioning the death of her husband; but that anomaly and blemish in the law has been remedied in a great many of the States of this country and in this District, and here particularly, by the Act of Congress of 1885, which provides that 'whenever by any injury done or happening within the limits of the District of Columbia, the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation, and the act, neglect, or default is such as would, if death had not ensued, entitle the party injured, or, if the person injured be a married woman, have entitled her husband, either separately or by joining with the wife, to maintain an action to recover damages, the person who or corporation which would have been liable if death had not ensued shall be liable to an action for damages for such death, notwithstanding the death of the person injured.'

" In other words, wherever the party injured, if he had survived, might have maintained an action, this action may be maintained after his death and is to be brought in the name of his personal representative, and the damages to be assessed in the action must be assessed with reference to the injury resulting from the act of negligence to the widow or next of kin of the deceased.  There are two things to be observed with reference to that.  The first is that no action could be maintained without the deceased himself might have maintained the action himself if he

had not died, and, in the next place, that the measure of damages must be the injury done to the widow or next of kin of the deceased.

"The question arose very early in the interpretation of these laws elsewhere as to the persons in whose favor relief could be administered under this form of legislation. There are people, as you know, who have a legal right to support and maintenance from others. The wife has a legal right to support by her husband, and an infant child is supposed to have a right to support from his parents. The question was made whether the relief intended to be given by this law was not to be applied to those cases only where the party has been deprived of what he had a legal right to in the way of maintenance and support. If that were the law the parties interested here, a nephew and niece, would have no claim at all, because they have no legal right to support by an uncle; but the courts have not taken so restricted a view of these statutes, and they have held that where the relations between the deceased and any surviving party have been such that the surviving party had a reasonable ground to expect to be supported or assisted by the deceased, as for instance, where an uncle takes charge of a child and provides for him or her, educates and supports them; in cases of that sort, where the past relations of the parties have been such that the beneficiary of the deceased had a reasonable ground to expect that his benefactions will be continued and the maintenance and support continued, that expectation is of itself a proper subject of compensation when it is destroyed by the death of the party on whom the beneficiary has depended. [Therefore, if such a case is made in this suit—that is, a case in which it appears the nephew and niece have been maintained or assisted by the deceased and therefore had a reasonable ground to expect the same thing in the future—the act depriving them of that expectation is a wrong for which compensation may be recovered.

"I may here put out of the case the nephew of Gen. Wilcox, because it is conceded that he is a man of full age and is capable of taking care of himself. He was not dependent upon his uncle and therefore had lost nothing pecuniarily by his death. All the evidence in the case relates to the niece.]

"The ground for liability in this case, asserted as against the defendants, is that in the construction of this work the District, the defendant—not the District of Columbia really, but those acting under the authority of the District of Columbia—conducted this work so negligently that Gen. Wilcox, without any negligence on his part, fell into an open trench and was so injured that death ensued. If that case is made out, without anything more, the liability of the defendant or of somebody is established.

" In all cases of this kind—that is, in all cases where an action is brought to recover damages for injury or death occasioned by neglect—it is a perfect defense if it can be shown that the plaintiff himself or the injured party if he is dead, was guilty of negligence which contributed directly to the injury—that is to say, if he could have avoided the consequences of the neglect on their part by the exercise of ordinary care and prudence himself—that is, the care which people ordinarily take of themselves—and failed to do it, he is not entitled to recover.

" [The contention in this case is that the employees of the paving company at the close of the day erected boards over this trench, forming a safe passageway over them, and erected on either side barricades with open arms or splays, as you may call them, with lights standing upon them, which invited anybody coming down the street to come for a safe passage over a footway well lighted and perfectly free from danger, and that Gen. Wilcox could not really have suffered the injury unless in the haste of attempting to meet an engagement or through wanton carelessness he

stepped outside of the barricade and went into a dangerous part of the street there and met with this accident.

"If that case is made out, if it is shown that either in consequence of haste or otherwise he proved himself wanting on that occasion in the care that men ordinarily exercise in their own behalf, in full view of this open passageway provided for the public, and so forth, then he would not have been entitled to recover damages had he survived, and those who represent him equally failed to establish that right.

"On the other hand, if the evidence for the plaintiff be true, that these excavations were not covered up at all and no barriers were put there to prevent people from going across the street at that point, and that the only precautions taken were to light some lamps or to rely upon the electric light, and that precaution, in your judgment, was not sufficient to guard against danger to persons exercising ordinary care, then a case of negligence is made out, and the plaintiff would be entitled to recover if upon other grounds her case has been sufficiently proven. I mean to say if it does not fail on other grounds, which I shall have to consider further.]

"Supposing, then, that you should be satisfied that a case of negligence is made out, an important question arises as to the amount of damages. [You will remember that the law allows damages only where the deceased could have recovered them, and only damages for such injury as has resulted from the death to the next of kin of the deceased. The only next of kin here concerned is the niece. As I have stated before, a party who has an expectation of substantial benefit or assistance from a decedent is a party who is injured by his death and has a right to maintain an action.] In considering what those expectations were in the present case several elements must be taken into consideration in your inquiry. In the first place, the chances of life of both of these parties must be considered, because of

course, no assistance ever could be rendered except during the joint lives of the uncle and niece. You must consider his chances of life and her's also.

"On the part of the plaintiff you are to consider that he was a man who, although sixty-five years of age, was of good health and temperate habits. You are to consider what is proven by the annuity tables : That in ordinary cases, out of a hundred thousand people, for instance, the chances are that a man sixty-five years of age may live eleven and one-tenth years longer. You are not to assume, as a matter of course, that that would have been the case, because all the time he, like the rest of us, was subject to accident by fire, flood, and pestilence that walketh abroad in the night, of which this very sad accident is itself an illustration. If it had not happened to him on that day it might have happened to him at some other time, or he might have been taken off by an epidemic, etc. All these things are to be considered by you in calculating the probabilities as to the duration of his life."

Counsel for the Plaintiff : "Your honor will tell them that he might have lived much longer."

The Court : "Yes ; and he might have lived beyond these eleven and one-tenth years.

"This is all somewhat a matter of conjecture. You do not know how long a man will live ; but having made up your mind that, but for this accident, you might safely count upon his living five or six, or eight or ten or twelve years, the next thing for you to consider is what were the reasonable expectations of the niece from him.

"In this connection I shall read you an instruction which has been asked on the part of the defendants, which, I think, contains a fair statement of the law on the subject :

(Here the court 'read the seventh prayer for instruction asked by the defendant, and granted, *ante.*)

"There have been the highest testimonials here of the character of Gen. Wilcox ; but this is not an element that

can enter into this question at all, except so far as to furnish some guarantee of his ability to secure and obtain employment.

"You will understand from this instruction, which, I think, is a fair statement of the law, that you are not to consider anything about his suffering or any blow to the affection of his surviving relatives; your duty is confined to a cold, dispassionate calculation of money value. You are to ascertain what material assistance of money value was received by his niece during his lifetime and what she had a reasonable ground to expect in the future. In that connection you are to consider, of course, on the part of the plaintiff, his mental ability and high character, the fact that he had been pretty generally employed, and would, in all probability, find employment in the future.

"On the other hand, for the defense, you have the right to consider the fact that he was not educated as a business man; that he never had any settled business; that he only had temporary employment from time to time; that at the time of his death he had an employment which was to terminate next year; that he could not, probably, have had much expectation of an accumulation of a fortune during his life, because he was not a man of that kind, and during the thirty years that have elapsed since the civil war it does not appear that he accumulated property; but you are to consider what his probable income was and what he would have been able to do for his niece.

"In this connection there is another instruction which has been asked by counsel, upon which I will make one or two remarks. It says:

"'To enable you to fix an amount as the pecuniary loss, sustained by these parties, it is incumbent on the plaintiff to show by the evidence that the deceased was contributing to their support and maintenance or to the support and maintenance of one of them. It is not sufficient to show

that he educated or contributed to the education of the niece.'

—" Of course an education, once finished, no further expectation under that head could be indulged in ; but still the fact of his giving that education was an earnest of his disposition to continue his benefactions in another form, and it might be considered in that connection—

"' Nor is it sufficient to show that he occasionally took her on trips of pleasure, nor that he occasionally made her presents, without any evidence indicating the expense of such trips or the value of such presents. Such evidence is too vague and indefinite to form the basis for estimate of pecuniary loss.'

" If it had been shown here that he was in the habit of making her a fixed allowance of five hundred or a thousand dollars a year, and you have that amount established so that you could safely count upon its continuance for the duration of his life, you would then have a pretty certain basis upon which to rest a judgment. You have heard the closing argument for the plaintiff, in which it is contended, upon the evidence, that all of his income except what was needed for his own support was devoted to this niece. You are to judge exactly what benefit she actually received in money value. If you come to the conclusion, for instance, that a certain amount was paid by him yearly, that enables you to have a starting point. But there is one other consideration to bear in mind. If he had lived for ten or twelve years and had continued to render assistance to this niece, you must remember that the assistance would have been distributed all over these future years. Your verdict, if you render a verdict, must be for a sum at present, and, of course, it would not be just to give her at present the whole amount that might possibly be received through those eight, ten, or twelve years yet to come, and therefore the future should be discounted—subjected to a discount because of her receiving the present value of these future

expectations. That is a consideration that ought to weigh with you in ascertaining what would be a fair compensation for the alleged loss.

" I think I need not say anything more about the question of damages. . . . "

Exceptions were reserved by the defendant to those portions of the charge which are here [ ] bracketed. The verdict and judgment were for the plaintiff, and the case was brought to this court by the defendant on bill of exceptions. The further material facts will be found stated in the opinion.

*Mr. S. T. Thomas,* Attorney for the District of Columbia, and *Messrs. Shellabarger & Wilson* for the plaintiff in error:

To the point that the declaration was insufficient, in that no pecuniary loss was alleged to have been sustained by the defendant in error, the following authorities were cited : *Railroad Co.* v. *Barron,* 5 Wall. 95 ; *Whitton* v. *RR. Co.,* 13 Wall. 270 ; *Railroad Co.* v. *Barker,* 13 Ark. 350 ; *City of Chicago* v. *Major,* 18 Ills. 349 ; *City of Chicago* v. *Scholter,* 75 Id. 468 ; *Conant* v. *Griffin,* 48 Id. 410 ; *Railroad Co.* v. *Gillam,* 27 Ills. App. 386 ; *Barley* v. *RR. Co.,* 4 Biss. 430; *Brady* v. *Chicago,* Id. 448 ; *Railroad Co.* v. *Cutter,* 19 Kans. 83 . *State* v. *RR. Co.,* 24 Md. 84 ; *Wynning* v. *RR. Co.* 59 Mich. 257 ; *Hutchins* v. *RR. Co.,* 44 Minn. 5 ; *Collins* v. *Davidson,* 19 Fed. Rep. 83 ; *Hardy* v. *RR. Co.,* 36 Id. 657 ; *Shaub* v. *RR. Co.,* 16 S. W. Rep. 94 ; *McGowan* v. *RR. Co.,* Id. 236 ; *Railroad Co.* v. *Wilson,* 48 Fed. Rep. 57 ; *Besencher* v. *Sale,* 8 Mo. App. 211 ; *Anderson* v. *RR. Co.,* 52 N. W. Rep. 840 ; *Oldfield* v. *RR. Co.,* 14 N. Y. 310 ; *Filley* v. *RR. Co.,* 29 Id. 252 ; *Dorman* v. *RR. Co.,* 1 N. Y. Supp. 334 ; *Steel* v. *Kurtz,* 28 Ohio St. 191 ; *Railroad Co.* v. *Zabe,* 33 Pa. St. 318 ; *Railroad Co.* v. *Rowan,* 66 Pa. St. 393 ; *Railroad Co.* v. *Butler,* 57 Id. 335 ; *March* v. *Walker,* 48 Tex. 375 ; *Railroad Co.* v. *Bradley,* 52 Id. 587 ; *Galveston* v. *Barbour,* 62 Id. 172 ; *Railroad Co.* v. *Matula,* 79 Id. 577 ; *Needham* v. *RR. Co.,* 38 Vt.

294; *Potter* v. *RR. Co.,* 21 Wis. 372; *Morgan* v. *RR. Co.,* 30 Pac. Rep. 303; *Munro* v. *RR. Co.,* 84 Cal. 515.

*Mr. John Selden* and *Mr. R. Ross Perry* for the defendant in error.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This action was brought by Mary R. Wilcox, as administratrix of the estate of General Cadmus M. Wilcox, deceased, against the District of Columbia, to recover damages, alleged to have been sustained by the plaintiff by reason of the alleged wrongful act, neglect or default of the defendant, or those acting by its authority, resulting in the death of the intestate, General Wilcox. The action is brought under the Act of Congress of February 17, 1885, 23 Stat. at Large, 307, relating to the District of Columbia, which provides that whenever the death of a person shall be caused by any wrongful act, neglect or default, which, if death had not ensued, would have entitled the party injured to maintain an action and recover damages in respect thereof, the person who or corporation which would have been liable if death had not ensued, shall be liable to an action for damages for such death, although the death may have been caused under such circumstances as constitute in law a felony; and in such action, " the damages *shall be assessed* with reference to the *injury resulting from such act, neglect or default causing such death, to the widow and next of kin of such deceased,*"—the recovery in no case to exceed $10,000.

In the second section it is provided, that such action shall be brought by and in the name of the personal representative of such deceased person, within one year; and by the third section it is provided that the damages recovered shall not be applied to the payment of debts of the deceased, " but shall inure to the benefit of his or her family, and be dis-

tributed according to the provisions of the Statute of Distributions in force in the District of Columbia."

The prototype of this act, and of the acts of the several States of the Union upon this subject, is found in the act of 9 and 10 Vict., C. 93, passed in 1846, and known as Lord Campbell's Act. The English statute, however, instead of making the recovery to the use of the widow and next of kin of the deceased, as has been done in the act of Congress of 1885, authorizes the recovery in the name of the personal representatives of the deceased, for the benefit of the wife, husband, parent and child of the deceased person, and the amount of recovery, after deducting costs, is required to be divided among the relatives mentioned *in such shares as the jury by their verdict shall find and direct;* and a similar provision is found in some of the State statutes upon this subject. All these statutes, however, were intended to supply a remedy not afforded by the common law, and in respect to which the common law was deemed defective.

The declaration in this case contains three counts, all substantially alike; and after setting forth the cause of the accident, the breach of duty of the defendant in not keeping the streets in safe condition, and the manner in which the accident occurred, and the nature of the injury received of which General Wilcox died, it then alleges that the deceased died intestate, and that he left no widow or children, but left surviving him as his only next of kin his nephew, Andrew D. Wilcox, and his niece, Mary R. Wilcox, for whose use and benefit this suit is brought; and that, at the time of his death, the said General Wilcox held a position in the service of the United States that paid him an annual salary of $1,800; that the plaintiff obtained letters of administration upon the estate of the deceased, and she avers that she is damaged by the wrongful act, negligence and default of the defendant, its agents and servants, in the sum of ten thousand dollars; wherefore she brings this suit, and

4 Ct. App.—8

claims of the defendant the sum of ten thousand dollars damages, besides costs of suit.

The defendant pleaded the general issue of not guilty, upon which issue the case was tried. The case is brought into this court on a bill of exception, containing the stenographic report of the entire trial, and everything that occurred in the course of it, covering considerably more than three hundred closely printed pages of record, while all the facts material to the questions to be decided on this appeal could easily have been compressed in less than twenty pages. We regret very much that records should be made up in this form ; for, to say nothing of the labor and difficulty of culling out the material facts from the great mass of immaterial matter, the cost is made very unnecessarily onerous to the losing party—a matter that should be avoided in all cases.

The material facts of the case, briefly stated, are these : The District of Columbia gave a permit to the Eckington Railroad Company to lay certain tracks upon G street, N. W., in the city of Washington, and that company contracted with the Cranford Paving Company to do certain excavating and filling necessary for the purpose of laying the tracks of the road. In the prosecution of this work certain cuts or excavations were made on G street across the intersection of that street with Fourteenth street, N. W., for placing therein the rails of a double line of street railroad along said G street. On the 26th of November, 1890, about 6 o'clock in the evening, General Wilcox, while walking on Fourteenth street from its intersection with New York avenue south towards F street and across G street, stepped his foot in one of the cuts or excavations thus made on G street and was thrown down, and his head striking the side of one of the other cuts, he received a very severe blow on the side of his head, causing, as it was supposed, a rupture of a bloodvessel over the brain, and from which injury he died intestate on the 2d day of December, 1890. The con-

tested question of fact was, whether the cuts or excavations at the crossing were properly lighted and guarded by signals to prevent accidents to persons using ordinary care in passing on the streets at night.

General Wilcox had never been married, and his only next of kin were his nephew and niece, the latter being the plaintiff in this cause. His estate was exceedingly small, but he was in the receipt of an annual salary of $1,800 from the Government.

The trial resulted in a verdict for the plaintiff for $5,416, and there was a motion for a new trial, and also a motion in arrest of judgment. The court required a remittitur of $416, and that being entered, the motion for a new trial was overruled, and the verdict allowed to stand for $5,000. The motion in arrest of judgment was also overruled.

In the course of the trial a great many exceptions were informally noted to rulings upon questions of the admissibility of evidence, but these exceptions were noted in the greater number of instances, because of the supposed insufficiency in the averments of the declaration to allow of the admission of the facts offered to be proved by the evidence objected to. And for the same reason, at the conclusion of the evidence, the defendant prayed the court to instruct the jury, that the *facts stated in the declaration were not sufficient* to enable the plaintiff to recover, and the verdict should be for the defendant; and, in the same connection, the defendant further prayed the court to direct the jury that the evidence adduced by the plaintiff was not sufficient to permit her to recover, and the verdict should be for the defendant. These requests were refused, and the defendant excepted.

The defendant then offered a series of prayers for instruction to the jury on the facts. Some of these prayers were refused, but substitutes given therefor in the general charge; others were refused altogether; but the seventh and eighth prayers, the objects of which were to define and limit

the inquiry of the jury and to declare, if the jury should find for the plaintiff, for what damages could be given, and for what they could not be given, were granted and read as part of the general charge. The court gave a full and extended charge to the jury, in which all the essential facts of the case were adverted to, and the limitations as defined in the granted prayers of the defendant were observed upon and explained to the jury. At the conclusion of the charge, various parts of it were designated by the defendant, to which exceptions were noted.

In the brief for the defendant, many errors are assigned ; but the questions that would seem to be important, and which embrace many of the minor questions that have been made may be reduced to three or four, and they are :

1st. Whether the declaration is sufficient upon which to found a recovery ?—and subordinate to this—

2d. Whether evidence should have been admitted touching the amount of probable loss sustained by the plaintiff when no special allegation of injury sustained is made in the declaration ?

3d. Whether it was error in the court to restrict the recovery to the probable loss sustained by the niece, regardless of the nephew ?

4th. Whether the court erred in refusing to grant the third and fourth prayers of the defendant, as to the negligence of the defendant, and the contributory negligence of the deceased in producing the accident that caused the death without the explanation or qualification thereof contained in the general charge to the jury?

There is another assignment made, but that is contended for as a consequence of the preceding assignment; and that is, that the court erred in not directing a verdict for nominal damages only.

1. With regard to the first assignment of error, that presents a question of pleading, and it is attempted to be raised by the motion in arrest of judgment, and also by the motion

to have the jury instructed that the declaration did not aver
sufficient facts to entitle the plaintiff to recover.   But neither
of these motions could prevail if the declaration disclosed
any ground for recovery whatever.   The contention is, that
it should have been alleged in the declaration that the
next of kin of the deceased, entitled under the statute, had
sustained pecuniary loss by reason of the death of the uncle;
that the right to recover can only exist in respect of special
damages sustained, and that such special injury must be
averred as well as proved.   And this, upon strict common
law principles of pleading, would seem to be unquestionably
true.   *Blake* v. *RR. Co.*, 18 Q. B. 93.   But this is an action
founded upon a statute, and in the Federal courts, at least,
the declaration used in this case would seem to be fully
sanctioned.

The statute of the State of Illinois of 1853, upon this sub-
ject, is substantially similar to the act of Congress of 1885,
under which this suit is brought.   By the Illinois statute
the right of action is conferred on the personal representa-
tive of the deceased, and it is provided that the amount
recovered in every such action "shall be for the exclusive
benefit of the widow and next of kin of such deceased
person, *and shall be distributed to such widow and next of
kin in the proportions provided by law, in relation to the
distribution of personal property left by persons dying in-
testate;* and in every such action the jury may give such
damages as they shall deem a fair and just compensation
*with reference to the pecuniary injuries resulting from such death,*
to the wife and next of kin of such deceased person," not
exceeding $5,000.

It is thus seen that while there are some slight differ-
ences in the phraseology of the two acts, the acts are sub-
stantially similar in their provisions with respect to the
parties entitled, and as to the mode of procedure.   It is very
clear, we think, that the meaning of the word " family,"
used in the act of Congress, embraces all those who would

be entitled under the Statute of Distributions, in case of intestacy of the deceased, and therefore the provisions of the act of Congress and the act of Illinois are in all respects similar, in respect to the parties entitled to the benefit of the recovery, and the conditions under which recovery can be had.

In the case of *Railroad Co.* v. *Barron*, 5 Wall. 90, this statute of Illinois was under consideration, and received a judicial construction. In the case as reported in 5 Wallace, the pleadings of the case are not set out. But we have the record of that case before us, and we find the declaration there not more specific in stating the special injury sustained by the next of kin by the death of the deceased, than the injury is stated in the declaration in this case. In that case, the deceased was never married, and his surviving next of kin were his father, brothers and sisters—the action being by the father as executor of the deceased.

In the first instance, the action was brought by the father in his individual character as next of kin, and after setting forth the facts attending the occurrence of the accident, and the consequent death of the son, the declaration simply alleged that the plaintiff was the personal representative of the deceased, and that the latter left no widow, but the plaintiff was father and next of kin, wherefore he had sustained damage in the sum of $5,000.

To this declaration there was entered a demurrer, which was not ruled upon, but the plaintiff obtained leave to amend, and he filed a new declaration, declaring in his character of executor; and after setting forth the facts of the accident causing the death, as in the previous declaration, the plaintiff averred that the deceased in his lifetime possessed and exercised great industry, prudence, energy, skill and good judgment in the management and control of his property and business affairs, by reason whereof he greatly augmented his estate and the profits thereof; where-

fore, by the death of the deceased, the plaintiff had sustained damage in the sum of $5,000.

He then alleged that the deceased had left a will of which the plaintiff was the duly qualified executor, and that he left certain named brothers and sisters, as next of kin, for whose use the suit was brought; but it was not alleged how or to whom the property of the deceased was disposed of by his will. As will be observed, there was an entire absence of any allegation of special pecuniary loss sustained by the next of kin, by reason of the death of the deceased.

There was a demurrer entered to this declaration also; but after argument and time taken for advisement, it was overruled by the court, and the case went to trial on the general issue plea of not guilty.

That case was tried in the Circuit Court of the United States before two very able and distinguished judges—the late Mr. Justice Davis, then of the United States Supreme Court, and the late Judge Drummond, then the Circuit Judge of that circuit.

It was strongly insisted in that case that the plaintiff could recover, if entitled to recover at all, nothing more than nominal damages, unless it was shown that the parties for whose use the suit was brought had, at the time of the death of the deceased, a *legal interest* in his life, and that, by his death, they had been deprived of something to which they had a *legal right.* But this proposition, made to the court in the form of a prayer, was rejected by the court; and, in referring to this contention, the court, in its charge to the jury, said: " We cannot adopt that construction of the law, but charge you (the jury) that there can be a recovery if the deceased left no kin surviving him who had any *legal* claim on him, if living, for support." The jury were fully charged upon the whole case, and we may elucidate some of the questions in this case by quoting another passage from the charge, as follows: " We do not think it requisite to prove present actual pecuniary loss. It can rarely be

done.   The attempt to do it would substitute the opinion of witnesses for the conclusions of the jury.   The facts proved will enable the jury to decide on the proper measure of responsibility.   Some cases are harder than others, and the law intends that the jury shall discriminate in different cases.   There is no fixed measure of damages, and no artificial rule by which the damages in a given case can be computed.   The jury are not to take into consideration the pain suffered by the deceased, or the wounded feelings of the surviving relatives, and no damages are to be given by way of punishment.

" In this case the next of kin are the parties who were interested in the life of the deceased.   They were interested in the further accumulations which he might have added to his estate, and which might hereafter descend to them. The jury have a right, in estimating the amount of pecuniary injury, to take into consideration all the circumstances attending the death of Barron—the relations between him and his next of kin, the amount of his property, the character of his business and the prospective increase in wealth likely to accrue to a man of his age, with the business and means which he had.

" There is a possibility in the chances of business that Barron's estate might have decreased rather than increased, and this possibility the jury may consider.   The jury also have a right to take into consideration the contingency that he might have married and his property descended in another channel.   And there may be other circumstances which might affect the question of pecuniary loss, which it is difficult for the court to particularize, but which will occur to you.   The intention of the statute was to give a compensation for the pecuniary loss which the widow (if any) or the next of kin might sustain by the death of the party; and the jury are to determine, as men of experience and observation, from the proof, what that loss is."

The passages from the charges of the court, which we

have just quoted, were all excepted to by the defendant, together with other portions of the charge, and the case was taken to the Supreme Court of the United States, where the judgment for the plaintiff was in all respects affirmed, and upon very much the same reasoning as that employed in the Circuit Court. 5 Wall. 90, 106.

We think, upon the authority of that case, we must hold the allegations in the declaration in this case sufficient to let in all the proof that could be legally offered and considered, within the scope of the inquiry indicated in the charge just referred to, in respect to the damage sustained by the next of kin. And this has been the recognized result of the decision of *Railroad Co.* v. *Barron,* as is fully shown in the case of *Serensen* v. *RR. Co.,* 45 Fed. Rep. 407. In that case, it was said by the court: " If the damages which may be recovered are not confined to the *legal pecuniary loss* sustained by the next of kin, I cannot see any necessity for setting forth specially the damages sustained. *Under the general allegation of damages,* evidence can be introduced *of all damages* which naturally and necessarily would result from the death of the deceased."

2. In regard to the second assignment of error, it is not necessary to say much, after what we have said in regard to the first assignment. The assignment itself is very indefinite, and the objection to the admissibility of the evidence excepted to seems to be grounded solely upon the theory that the evidence should have been rejected, because there was no specific allegation in the declaration to warrant its admission. But this ground of objection we have shown to be untenable. If, however, it were conceded that some of the facts or circumstances admitted against objection were irrelevant or immaterial, and therefore inadmissible, the error, if such existed, was very fully corrected in the charge to the jury, and especially in the instructions granted at the instance of the defendant. The instructions given by the court were full and explicit, and it is not to be presumed

or supposed by intendment that the jury disregarded the instructions of the court; but, on the contrary, the presumption is that the instructions were observed and followed by the jury. The scope of the inquiry, and for what matter damages could be allowed, and for what damages could not be allowed, where questions so fully explained as to furnish a clear guide to the correct finding by the jury ; and where such is the case, the error in admitting immaterial evidence will not furnish ground for reversal. *Railroad Co.* v. *Whitton*, 13 Wall. 270, 290 ; *Railroad Co.* v. *Roy*, 102 U. S. 459; *Railroad Co.* v. *Madison*, 123 U. S. 524.

3. The third assignment of error presents the question whether the restriction by the court of the right to recover to the damages sustained by the niece of the deceased, irrespective of any claim by the nephew, was error of which the defendant could complain.

The recovery, under the statute, could not be otherwise than *in solido*. The act of Congress, unlike the act of 9 and 10 Vict., which requires the jury to distribute the recovery, has expressly provided that the amount recovered shall be distributed according to the provisions of the Statute of Distributions. Excluding the consideration of the rights of the nephew may operate to the prejudice of the niece, if her brother should make claim to participate in the recovery, under the statute ; but it is not perceived in what respect the defendant can be prejudiced by any claim that the nephew may make to share in the verdict. How the verdict may be divided, if it be divided at all, in no manner concerns the defendant. And it is a settled principle that no judgment will be reversed in a court of error where it appears that the alleged error could not have prejudiced, and did not prejudice, the rights of the party against whom the ruling was made ; and *a fortiori* where the ruling was to the advantage of such party. *Lancaster* v. *Collins*, 115 U. S. 222, 227, and cases there cited.

4. Then, with respect to the supposed error in refusing

the prayer of the defendant as to the negligence of the defendant and the contributory negligence of the deceased (designated as prayers 3 and 4) it is only necessary to say that the subjects of those prayers were very fully and clearly explained to the jury in the general charge that was given by the court. In the charge the court explained the questions of negligence of the respective parties thus: "In all cases of this kind—that is, in all cases where an action is brought to recover damages for injury or death occasioned by neglect—it is a perfect defense if it can be shown that the plaintiff himself, or the injured party, if he is dead, was guilty of negligence which contributed directly to the injury; that is to say, if he could have avoided the consequences of the neglect on their part by the exercise of ordinary care and prudence himself—that is, the care which people ordinarily take of themselves, and failed to do it, he is not entitled to recover.

"The contention in this case is, that the employees of the paving company, at the close of the day, erected boards over the trench, forming a safe passageway over them, and erected on either side barricades with open arms or splays, as you may call them, with lights standing upon them, which invited anybody coming down the street to come for a safe passage over a footway well lighted and perfectly free from danger, and that General Wilcox could not really have suffered the injury unless, in the haste of attempting to meet an engagement or through wanton carelessness he stepped outside of the barricades and went into a dangerous part of the street there, and met with this accident.

"If that case is made out, if it is shown that either in consequence of haste or otherwise, he proved himself wanting on that occasion in the care that men ordinarily exercise in their own behalf, in full view of this open passageway provided for the public, then he would not have been entitled to recover damages had he survived, and those who represent him equally fail to establish that right.

" On the other hand, if the evidence for the plaintiff be true, that these excavations were not covered up at all, and no barriers were put there to prevent people from going across the street at that point, and that the only precautions taken were to light some lamps or to rely upon the electric light, and that precaution, in your judgment, was not sufficient to guard against danger to persons exercising ordinary care, then a case of negligence is made out, and the plaintiff would be entitled to recover, if upon other grounds her case has been sufficiently proven—that is, if the case does not fail on other grounds which I shall have to consider further."

This is as full and as clear an exposition of the subjects of the prayers as the defendant could in reason ask of the court, and being free from error, as we think it is, having in view the facts of the case, clearly, there could be no ground for alleging error in rejecting the prayers. In a case to which we have already referred, that of the *Railroad Co.* v. *Whitton, supra,* it was said by the Supreme Court in regard to the instructions in that case, that " Some of the instructions prayed by the defendant presented the law respecting the liability of the company correctly, and some of them were based upon an assumed condition of things which the evidence did not warrant. But it is not error for a court to refuse to give an extended series of instructions, even though some of them may be correct in the propositions of law which they present, if the law arising upon the evidence is given by the court with such fullness as to guide correctly the jury in its findings, as was the case here ; nor is a judgment to be set aside because the charge of the court may be open to some verbal criticisms in particulars considered apart by themselves, which could not, when taken with the rest of the charge, have misled a jury of ordinary intelligence."

Here, the charge was full and covered the entire case, and it furnished a correct guide to the findings of the jury,

and we perceive nothing in it of which the defendant can complain. It was not error, therefore, to reject all the prayers of the defendant, except the seventh and eighth, which were granted and read as part of the general charge. There are some other assignments of error, but they are of minor importance, and have been substantially disposed of in what we have said in disposing of the more important questions. The refusal to grant a new trial has been assigned as ground of error; but the granting or refusal to grant a new trial is not the subject of a bill of exception, and the ruling of the court on such motion cannot be reviewed by an appellate court. That has been so often decided that it has become axiomatic in appellate procedure, in the absence of express statutory provision upon the subject.

Upon the whole, we discover no error for which the judgment should be reversed, and it must therefore be affirmed; *and it is so ordered.*

*Judgment affirmed.*