**RAMSEY v. ROSS et al.**

No. 6586.

United States Court of Appeals for the District of Columbia.

Decided July 6, 1936.

Alvin L. Newmyer, David G. Bress, and Byron G. Carson, all of Washington, D. C., for appellant.

Charles S. Baker and Benjamin L. Tepper, both of Washington, D. C., for appellee Ross.

H. Clay Espey, of Washington, D. C., for appellee Beard.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

In May, 1934, Marjory T. Ramsey, as administratrix of the estate of Jessie M. Townsend, deceased, filed a declaration in the lower court against Charles S. Ross and Walter H. Beard claiming damages in the sum of $10,000 from defendants upon the charge that on January 13, 1934, defendants, while severally driving automobiles upon the streets of Washington, D. C., had negligently caused the death of plaintiff's decedent, Jessie M. Townsend. The plaintiff alleged that the wrongful acts and negligence of the defendants in causing the

death of the deceased were such as would have entitled plaintiff's intestate to maintain a suit for damages against defendants had she lived, and that the intestate was and is survived by her sister, who is the plaintiff, personal representative, and sole next of kin of the decedent.

This action was brought under the provisions of section 1301, D.C.Code (title 21, § 1, D.C.Code 1929), which reads in part as follows:

"Chapter 1.—Negligence Causing Death.

Section 1.—Liability.—Whenever by an injury done or happening within the limits of the District of Columbia the death of a person shall be caused by the wrongful act, neglect, or default of any person or corporation, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured, or if the person injured be a married woman, have entitled her husband, either separately or by joining with the wife, to maintain an action and recover damages, the person who or corporation which would have been liable if death had not ensued shall be liable to an action for damages for such death, notwithstanding the death of the person injured, even though the death shall have been caused under circumstances which constitute a felony; and such damages shall be assessed with reference to the injury resulting from such act, neglect, or default causing such death, to the widow and next of kin of such deceased person: Provided, That in no case shall the recovery under this title exceed the sum of ten thousand dollars: * * *

"3. Distribution of damages.—The damages recovered in such action shall not be appropriated to the payment of the debts or liabilities of such deceased person, but shall inure to the benefit of his or her family and be distributed according to the provisions of the statute of distribution in force in the said District of Columbia."

The defendants severally filed their pleas to the declaration denying the charge of negligence.

The case came on for trial, and after hearing the testimony and the charge of the court the jury returned a verdict for the plaintiff in the sum of $1 against both defendants, to which verdict the plaintiff excepted. The plaintiff thereafter filed a motion for a new trial upon the grounds "that the verdict is contrary to the evidence and to the instructions of the court on the measure of damages and because the verdict is grossly inadequate and for other reasons apparent of record." This motion was overruled with an exception to the plaintiff. The plaintiff thereupon appealed the case to this court.

The sole issue presented to the court by the appellant is the charge that the verdict for $1 was grossly inadequate and was contrary to the evidence and to the instructions of the court on the measure of damages.

On the subject of damages to the plaintiff because of her sister's death the court instructed the jury as follows:

"You are also instructed that before Mrs. Ramsey, the plaintiff in this case, may recover, she must show pecuniary or money loss to her through Miss Townsend's death. In this regard you are further instructed that the law does not allow recovery based upon sickness of the plaintiff or for physical or mental suffering endured either by Miss Townsend, the decedent, or by Mrs. Ramsey, the plaintiff.

"You are instructed that in the event either or both defendants are found guilty of negligence, the plaintiff's right to damages is confined to a calm, dispassionate calculation of money value; that damages cannot be allowed properly to the plaintiff for wounded feelings and sorrow in consequence of the death of her sister, nor on account of the suffering, mental or physical, of the decedent, by reason of the accident, and that plaintiff would be entitled to recover only such sum as will fairly and reasonably compensate the plaintiff, decedent's sister, for any financial loss sustained by plaintiff by reason of the decedent's death, which is the amount that the plaintiff had reasonable ground to expect from the decedent had she lived, considering what material assistance of money value was received by the plaintiff from the decedent during her lifetime.

"Again, if your verdict be in favor of the plaintiff, then the damages to be awarded will be the money value of the life of the decedent had she not been killed as aforesaid, to her surviving sister, as may be shown by the evidence. In estimating these damages the jury have the right to consider all of the testimony with reference to the age, health, expectancy in life, earnings and employment of the decedent and her sister and their relationship toward each other, as bearing on any money or things of money value which the testimony may show the surviving sister to have

been receiving from the decedent and to consider from the evidence how much the surviving sister might reasonably have expected to receive in the future, as shown by the evidence, if any, which she has been or may be precluded from receiving by reason of her sister's death, not to exceed the sum claimed in the declaration."

No exception was taken by any of the parties to this charge.

For the purpose of showing her pecuniary loss by reason of the death of her sister, plaintiff introduced the following evidence:

The plaintiff as a witness testified in substance that she had lived in the District of Columbia with her sister since 1917 and up to the time of her sister's accident on January 13, 1934, wherein her sister was killed; that during this entire period the witness and her deceased sister did not live apart from each other at any time; that she and her deceased sister were the only two remaining members of their family; that the decedent was 47 years of age at the time of her death and witness at that time was 37 years of age; that the decedent was in good health up to the time of her death and was employed by the Internal Revenue Bureau; that when witness and decedent came to Washington they lived with their parents; that their father died in 1918 and their mother in 1928, and from 1928 to the deceased's death decedent and witness resided together; that witness is in good health and was at the time of her sister's death and still is employed by the Internal Revenue Department in the capacity of a stenographer; that at the time of her sister's death witness was earning $1,320 per year and her sister was earning $1,866 per year and at no time did the witness earn as much as her deceased sister did; that they were very devoted to each other and spent a great deal of time together.

That with reference to the contributions made by the decedent to the witness, the witness testified that the decedent contributed a great deal to the furnishings, furniture, and made the home comfortable; that the deceased contributed more to the witness' home in money than did the witness, and that the witness did not contribute as much as did the decedent to the ordinary expenses of their household; that the decedent contributed to the witness in money about $300 a year; that witness had no other income except her earnings; that there were times when witness was compelled to remain at home on account of illness, and upon such occasions her sister was always very thoughtful to see if there was anything she could do for the witness to help her, and her sister was always concerned about the witness whenever she did not feel well; that whenever her sister went off on a vacation she would always bring back gifts.

On cross-examination the witness testified that her sister contributed to her about $300 per year in money, which sum was given to the witness at various times, but not for payment of household expenses, but given directly to the witness personally; that the witness has no record of these payments and could not state or recall in detail how much the individual payments amounted to or when they were made; that her sister did not give her any money during the month of January, 1934, in which month her sister was killed, but that she did give the witness some money during December, 1933, in that around Christmastime her sister made a present to the witness of $25 in cash but gave her no other money during that month; that witness could not recall receiving any money from her in November, but in October she received about $5 or $8 because, if the witness would run short, her sister would advance it to her, and, if the witness was not able to pay her bills, her sister would advance it; that these sums which were advanced to the witness by her sister and the bills which her sister paid were never paid back by the witness; that during the summer of 1933 her sister gave witness $45 for the witness' vacation, as a present for that purpose, not as a loan but as a gift for the purpose, of going to the World's Fair at Chicago during June and July of 1933; that during that year her sister also gave her an Elgin wrist watch; that witness has been attending school since 1929, and during that period her sister would give her money for the purpose of attending school and also gave her money for that purpose in 1933, but the witness never counted it up at the end of any year, but approximates that for the year of 1933 it was about $300; that, although witness could not state that this exact amount was given also in 1932, witness stated that it was very close to $300 for every year, but that for the year 1933 it was at $300 and for the other years it was pretty close to that, it may have been a few dollars less, but to the witness' knowledge it was very close to $300.

On further examination the witness testified that she is married and lives with her husband, who is in the Marine Corps, and that they lived together with her deceased sister. On redirect examination the witness testified that her husband was in the Marine Corps when she married him 5 years ago, and during that period her husband lived with the witness and her deceased sister in the same house up to the time her sister died; that her husband lived in the house in which they lived prior to their marriage, and after their marriage her husband continued to contribute the same amount of rent for his room in the house as he had done before they were married, but, besides paying for his share of the rent, he paid nothing else toward the support of the witness; that her husband is an enlisted man in the Marine Corps.

It was testified by Andy C. Ramsey, the husband of the plaintiff, that he has been in the Marine Corps for 24 years, and that in January of 1934 he was a staff sergeant and is now a quartermaster clerk; that he lived in the home with his wife and her sister; that there was an exceptionally close and affectionate relationship between his wife and sister; that, aside from paying his share of the rent, witness paid nothing toward the maintenance of his wife; that the base pay of the witness in January 1934 was $90 per month; that he contributed only $15 per month to the household; that besides his base pay he received approximately $60 additional per month, and out of his whole salary he contributed $15 per month, which was for his room rent, and contributed nothing else to the household or his wife's support except things like gifts, but could not say definitely how much he gave his wife a year in addition to the $15 per month contributed toward the rent; for gifts the witness stated that he gave his wife gifts during the year at the approximate value of $50, but that he did not in any way contribute anything to the running of the house. Upon redirect examination the witness stated that his wife's deceased sister was in normal good health during her lifetime.

The errors assigned by the appellant are that the court erred in refusing to set aside the verdict of the jury as being contrary to the evidence; in refusing to set aside the verdict on the ground that the verdict was grossly inadequate; in refusing to grant the motion for new trial on the ground that the verdict is not supported by the evidence and because the verdict was grossly inadequate; in denying the motion for new trial on the ground that the verdict was in effect a verdict for defendants; and that the court abused its judicial discretion in refusing to grant the motion for new trial upon the foregoing grounds.

■ In our opinion it is our duty to affirm the judgment of the lower court. There is really but a single ground advanced by appellant for a reversal of this judgment, and that is, that the amount of damages found by the jury in its verdict was grossly inadequate. It does not appear, however, that this contention is correct. It became the duty of the jury to estimate and fix the amount of the pecuniary loss sustained by the plaintiff by reason of the death of her sister. This loss, according to the testimony, depended wholly on occasional gifts which her sister might at her pleasure extend to the plaintiff and which on the other hand she might at any time withhold from her. The amounts given by the deceased to her sister in past years were quite uncertain and their continuance was wholly speculative. The amount of the pecuniary loss to the plaintiff under such circumstances is a matter concerning which reasonable men might well differ. It was plainly a question for the jury and not for the court. "Where uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury." Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720.

The testimony discloses that the plaintiff was not dependent for her livelihood upon her deceased sister, nor, so far as appears, had she ever been. The deceased sister had not at any time stood in loco parentis to the plaintiff. They were both employed, each earning a sufficient salary for her support.

■ The jury heard the testimony and saw the witnesses when testifying, and we cannot agree with the contention that it was the duty of the trial court to set aside their verdict as wholly inconsistent with the evidence. But, however this may be, the trial court heard the motion of the plaintiff to set aside the verdict and grant a new trial because of the inadequacy of the damages, and denied this motion. This motion was based upon the single contention that the damages granted by the verdict were to-

tally inadequate. No question was made concerning the charge of the court to the jury. No exception had been taken to it when delivered. The court overruled the motion for a new trial, and the present appeal is based upon the same contention concerning the inadequacy of the damages.

The question thus raised is answered by the decision of this court in the case of Washington R. & E. Co. v. Upperman, 47 App.D.C. 219, 229, being a case brought for damages for the wrongful death of the plaintiff's father, who, as alleged, was killed by the defendant's negligence. In that case we said: "This brings us to the last assignment of error, which is that the amount of the verdict is excessive. This assignment is based upon the denial of a motion for a new trial in the court below. Refusal to set aside a verdict on motion for a new trial will not be reviewed on appeal. Columbia R. Co. v. Cruit, 20 App. D.C. 521; Woods v. Richmond & D. R. Co., 1 App.D.C. 165; District of Columbia v. Wilcox, 4 App.D.C. 90. It has also been held that it is not 'within the province of this court to reverse a judgment for the reason that a verdict is excessive.' American Secur. & T. Co. v. Kaveney, 39 App. D.C. 223, 230. This is but an annunciation of the Federal rule. Wabash R. Co. v. McDaniels, 107 U.S. 454, 2 S.Ct. 932, 27 L. Ed. 605; Missouri P. R. Co. v. Chicago & A. R. Co., 132 U.S. 191, 10 S.Ct. 65, 33 L.Ed. 309; Wilson v. Everett, 139 U.S. 616, 11 S.Ct. 664, 35 L.Ed. 286."

In Wilson v. Everett, supra, the court said: "The principal ground of complaint by the defendant seems to be that the jury had no basis for finding a verdict for $10,-000, but that their verdict should have been for either $5,000 or $15,000. But this was a question to be reached only through a motion for a new trial; and we cannot, on this writ of error, review any error committed in that respect by the jury, if there were one. Nor can we take cognizance of the complaint that the court overruled the motion for a new trial, or that the verdict of the jury was contrary to law and not warranted by the testimony. The case was fairly submitted to the jury, and the issues involved were passed upon by them."

In New York Central & Hudson River Railroad Co. v. Fraloff, 100 U.S. 24, 31, 25 L.Ed. 531, the court said: "No error of law appearing upon the record, this court cannot reverse the judgment because, upon examination of the evidence, we may be of the opinion that the jury should have returned a verdict for a less amount. If the jury acted upon a gross mistake of facts, or were governed by some improper influence or bias, the remedy therefore rested with the court below, under its general power to set aside the verdict. But that court finding that the verdict was abundantly sustained by the evidence, and that there was no ground to suppose that the jury had not performed their duty impartially and justly, refused to disturb the verdict, and overruled a motion for a new trial. Whether its action, in that particular, was erroneous or not, our power is restricted by the Constitution to the determination of the questions of law arising upon the record. Our authority does not extend to a re-examination of facts which have been tried by the jury under instructions correctly defining the legal rights of parties."

The authority of this court to reverse the judgment now in question is effectually denied by the Supreme Court of the United States in Fairmont Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 254, 77 L.Ed. 439, in the following terms: "First. The rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by a long and unbroken line of decisions; and has been frequently applied where the ground of the motion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by a Circuit Court of Appeals. Its early formulation by this Court was influenced by the mandate of the Judiciary Act of 1789, which provided in section 22 that there should be 'no reversal in either (circuit or Supreme) court on such writ or error * * * for any error in fact.' Sometimes the rule has been rested on that part of the Seventh Amendment which provides that 'no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law.' More frequently the reason given for the denial of review is that the granting or refusing of a motion for a new trial is a matter within the discretion of the trial court."

Accordingly, we affirm the decision of the lower court, with costs.

**Affirmed.**