Lucille M. RANKIN, Administratrix of the Estate of Ronald Rankin, Deceased, et al., Appellants,

v.

SHAYNE BROTHERS, Inc., Appellee.

Billy F. RANKIN, Appellant,

v.

SHAYNE BROTHERS, Inc., Appellee.

Nos. 12436, 12437.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 14, 1955.

Decided April 23, 1956.

**36**

Mr. Lester Wood, Washington, D. C., for appellants.

Mr. J. Harry Welch, Washington, D. C., with whom Messrs. H. Mason Welch and John R. Daily, Washington, D. C., were on the brief, for appellee.

Before PRETTYMAN, FAHY and DANAHER, Circuit Judges.

FAHY, Circuit Judge.

At an intersection in the District of Columbia there was a collision of a passenger automobile and a truck. The truck was owned by defendant, a corporation, and was operated by its agent, Walker. The driver of the car was Billy F. Rankin, and the passengers were his wife, Lucille M. Rankin, and their infant son, Ronald Rankin, who was about nine weeks old. Both husband and wife were injured as a result of the collision, and their son died. In No. 12437 Billy F. Rankin sues in his individual right, and in No. 12436 his wife sues both in her own right and, under §§ 16–1201 to 16–1203, D.C.Code 1951, as administratrix of her son's estate for his wrongful death. The cases were consolidated for trial and tried to a jury. The jury found for Lucille M. Rankin as administratrix in the sum of $123.90, and for her individually in the sum of $3,000. The court directed a verdict for the defendant in the suit of the husband. Judgments were entered accordingly and all plaintiffs appeal.

Individually and as administratrix Mrs. Rankin complains principally of the inadequacy of the damages. In the husband's appeal the chief error relied upon is the direction of a verdict for defendant. This comes ultimately in our view to the question whether in that case the husband was entitled to go to the jury on the theory defendant had a last clear chance to avoid the accident.

The failure of the jury to award damages for the death of the infant other than $123.90, the amount of out-of-pocket expenses, creates considerable wonderment. In awarding this amount the jury was required to find defendant responsible for the infant's death. The jury having so found, the statute, § 16–1201, D.C.Code 1951, permitted substantial damages, not limited to out-of-pocket expenses actually incurred. National Homeopathic Hospital v. Hord, 92 U.S. App.D.C. 204, 204 F.2d 397. See, also, the opinion of District Judge Holtzoff in that litigation, D.C., at 102 F.Supp. 792. See, further, United States Electric Lighting Co. v. Sullivan, 22 App.D.C. 115; Gill v. Laquerre, 51 R.I. 158, 152 A. 795; Atkeson v. Jackson Estate, 72 Wash. 233, 130 P. 102, affirmed on rehearing en banc, 74 Wash. 700, 134 P. 175; Ihl v. 42d Street & Grand Street Ferry R. R., 47 N.Y. 317. The principles established in the cases as to the measure of damages were correctly stated to the jury by District Judge Tamm. He instructed that in event defendant was liable the plaintiff-administratrix,

"is entitled to recover the value of the child's services during the child's minority, that is, until the child reaches 21 years of age, had the child lived, and such further sum as a parent might properly have received from the deceased if the deceased had lived, less the cost that would have been incurred in bringing up the child.

"This rule is based upon the theory that the parent is entitled to the services and to the earnings of the child during the child's minority, and also may expect a contribution from him thereafter if needed.

"The amount of damages to be awarded must be based largely on the good sense and sound judgment of the jury, because this amount cannot be computed by any mathematical formula, and the amount must be based upon all the facts and cir-

cumstances of the case involving such matters as the age of the child at the time of its death; the age and financial standing of the parents, the life expectancy of the child and of the parents under the mortality tables as of the date of the child's death, and similar considerations."

No other or different instruction in this regard was requested on behalf of plaintiff.

After retiring the jury asked to be instructed again about the infant's case. Instructions previously given which were unrelated to the question of damages were re-read to the jury. The court then inquired whether the jury also desired repetition of the instructions on the measure of damages in the infant's case. The foreman responded he did not believe so. After the jury retired again, however, a note was sent to the court by the foreman inquiring what factors under the law could be considered as a basis for determining the amount of damages for the death of the infant in the event the jury allowed a recovery. The jury was brought back and the instruction on this subject above set forth was repeated, with the comment by the court, "That is the limit of the measure of damages upon which the Court can charge you." No additional charge was then requested by counsel for the administratrix and no objection was made to the one given.

■ In these circumstances, and notwithstanding there was evidence to support substantial damages, we are impelled to hold that the District Court did not abuse its discretion in refusing to grant a new trial on the ground of inadequacy of the award. Though properly instructed the jury appears to have been unable to find with sufficient certainty that substantial damages measurable in money grew out of the death of the infant. The District Court was not required upon the evidence adduced to insist upon a different result. This court, like courts generally, has been reluctant to set aside jury awards for personal injuries on the ground of either excessiveness or inadequacy, assuming constitutional power to do so.[1] Coca Cola Bottling Works v. Hunter, 95 U.S.App.D.C. 83, 219 F.2d 765; National Homeopathic Hospital v. Hord, supra; Frasca v. Howell, 87 U.S.App.D.C. 52, 182 F.2d 703; Dean v. Century Motors, 81 U.S.App.D.C. 9, 154 F.2d 201; Ramsey v. Ross, 66 App. D.C. 186, 85 F.2d 685; cf. Hulett v. Brinson, D.C.Cir., 229 F.2d 22. And in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 481, 53 S.Ct. 252, 254, 77 L.Ed. 439, it is said:

> " * * * The rule that this Court will not review the action of a federal trial court in granting or denying a motion for a new trial for error of fact has been settled by a long and unbroken line of decisions; and has been frequently applied where the ground of the motion was that the damages awarded by the jury were excessive or were inadequate. The rule precludes likewise a review of such action by a Circuit Court of Appeals."[2]

We refer also to Dunn v. United States, 284 U.S. 390, 394, 52 S.Ct. 189, 191, 76 L.Ed. 356, where it is said that though the verdict, as in the case at bar, possibly may have been the result of compromise, or of a mistake on the part of the jury, "verdicts cannot be upset by speculation or inquiry into such matters." Compare, however, such cases as Wallace v. City of Rock Island, 323 Ill.App. 639, 56 N.E.2d 636.

1. See Neese v. Southern Ry. Co., 350 U.S. 77, 76 S.Ct. 131.

2. Footnotes are omitted. None of the cases cited by the Court in its footnote 4, 287 U.S. at page 481, 53 S.Ct. at page 254, support explicitly the reference to "inadequate" as distinct from excessive damages. But the Fairmont case itself was one of inadequacy. The dissent of Mr. Justice Stone and Mr. Justice Cardozo was based on their view that the verdict was contrary to the instructions and therefore contrary to law.

■ In the case of Lucille M. Rankin, individually, the verdict, as we have stated, was in her favor and in the sum of $3,000. The principles above set forth even more clearly apply to her case. The actual expense loss to Mrs. Rankin amounted to approximately $800, leaving some $2,200 to cover damages for injuries to her person. These injuries were not insignificant and we may honestly feel that the amount awarded to her individually, as well as to her as administratrix, was less than should be. But the decision was for the jury. Here, as when a jury is thought to have leaned toward an excessive award, an appellate court should be reluctant to interfere, particularly when the trial court has refused to do so.

■ In No. 12437, the appeal of Billy F. Rankin, it was error for the court to direct a verdict for defendant at the conclusion of all the evidence. The court did so because of Rankin's contributory negligence. But we think Rankin was entitled to have the case go to the jury on the theory of the last clear chance, as he requested. Before analyzing the relevant evidence we restate the essential elements of the doctrine itself. Insofar as here pertinent these are that notwithstanding plaintiff's contributory negligence defendant may be found liable if the jury should find that plaintiff was in a position of peril of which he was oblivious, that defendant was aware, or had he exercised reasonable care would have been aware, of plaintiff's peril and obliviousness thereof, and that thereafter defendant by the exercise of reasonable care could have avoided the accident. Schear v. Ludwig, 79 U.S.App.D.C. 95, 143 F.2d 20, certiorari denied, 323 U.S. 734, 65 S.Ct. 72, 89 L.Ed. 589; Capital Transit Co. v. Bingham, 94 U.S.App.D.C. 75, 212 F.2d 241; Finney v. Capital Transit Co., 91 U.S.App.D.C. 61, 198 F.2d 81; Jackson v. Capital Transit Co., 69 App. D.C. 147, 99 F.2d 380, certiorari denied, 306 U.S. 630, 59 S.Ct. 464, 83 L.Ed. 1032.

We turn now to the evidence which we think justified Rankin's request for an instruction framed within these elements of the doctrine.

It is obvious the plaintiff was in a position of peril in approaching the intersection at approximately the same time as defendant's truck. The fact of the collision so demonstrates. That the jury could have found Rankin to be oblivious of such peril appears from the following evidence: He stated he never saw the defendant's truck until just before the collision, when he unsuccessfully tried to swerve his car out of the truck's path. The wife's testimony supports this possible view of the evidence. She testified she glanced to her right and left as they entered or neared the intersection but saw nothing. Further support comes from the testimony of Walker, the truckdriver, to the effect that plaintiff's car did not slow down at any time, and the testimony of Conley, one of Walker's companions, that the Rankin car actually picked up speed near the intersection.

■ This brings us to the issue whether the jury might also have found that Walker was aware or should have been aware that plaintiff was in peril and was oblivious of the fact. At one point Walker testified he first saw plaintiff's car when it was about 400 feet and he was about 100 feet from the intersection. But he would not deny he had testified at Municipal Court[3] that he first saw plaintiff's car when both vehicles were about 200 feet from the intersection; and one of the officers who arrived at the scene shortly after the accident testified he estimated that the place where Walker told him he first saw plaintiff's car was about 200 feet from the intersection. That the cars were approximately equidistant from the intersection as they approached was also suggested by the testimony of each driver as to his own speed, which would permit the jury to conclude that they were both traveling at

---

3. This testimony was in another matter growing out of the same accident.

about the same speed. Moreover, Walker's statement that his speed was about 20 miles per hour approaching the intersection and 15 miles per hour as he entered the intersection tended to discredit his testimony concerning distance, since if both items of evidence were true the plaintiff would have had to be traveling at four times Walker's speed or about 70 to 80 miles per hour. From all this, then, the jury could have concluded that Walker saw plaintiff when both vehicles were about 200 feet from the intersection. The jury also could have concluded that after seeing plaintiff's car, Walker should have or actually did perceive the danger of a collision. He stated there was no question in his mind that he could cross the intersection before plaintiff got there; but the jury might conclude that such conviction on his part was due to his negligence. The only rational basis for such a thought, once he had seen the Rankin car, if it was about the same distance from the intersection as the truck, would be that the car was traveling much slower than the truck. But all direct evidence, except plaintiff's, was that both vehicles were traveling at about the same speed. Furthermore, the jury could have inferred that Walker actually knew of the danger from his statement that he kept plaintiff's car in view at all times while approaching the intersection. We think it also clear the jury could have found that Walker knew or should have known that plaintiff was oblivious of his danger. From the evidence as to the plaintiff's rate of speed the jury could have decided that anyone aware of that rate, or who should have been aware of it, did or should have perceived that plaintiff was oblivious of the danger of a crash. Plaintiff's testimony indicated that as he approached the intersection he first decelerated and then accelerated his car. Walker testified that the plaintiff's car did not slow down at any time. And as we have seen one of Walker's companions in the truck testified that the car actually picked up speed as it approached the intersection. No matter which of these views the jury accepted,

it could have concluded that Walker should have been aware of Rankin's rate of speed and its possible significance. Although Walker testified that he was looking straight ahead when he entered the intersection, he also testified that he had kept Rankin's car in view as he approached the intersection. Surely the jury could have decided that after Walker noted the approach of Rankin at a speed which remained constant until shortly before he entered the intersection, due care would have required him to keep his eye on the car, and that had he done so he would have seen either that the plaintiff did not slow down or that he actually picked up speed, indicating unawareness of danger.

▮ We come, then, to the remaining question: Should the jury have been given the opportunity to decide whether or not Walker, after he became aware, or should have become aware, of Rankin's position of peril and Rankin's unawareness thereof, could have averted the accident by the use of reasonable care? Walker testified there was nothing wrong with his brakes and that he could have stopped at any time before he reached the intersection. In view of this testimony and the other circumstances we have noted the jury could have concluded that had Walker been in the exercise of due care, he would have seen the danger of the approaching Rankin car, and, at the speed at which he was travelling could have stopped when, had he exercised due care, he would have realized Rankin would not do so. It is a narrow question, to be sure, but Rankin was entitled to have the jury answer it on the evidence.

▮ Appellants urge error in the consolidation of the cases for trial. Since there were common questions of fact the consolidation was permissible under Rule 42(a), Fed.Rules Civ.Proc., 28 U.S.C.A. Under Rule 42(b), however, the court was authorized in furtherance of convenience or to avoid prejudice to order separate trials. No point is made with respect to convenience, and the indications

of prejudice in the consolidation are not sufficiently strong to give us ground for holding that the District Court abused its discretion in trying the cases together.

No other point we think requires discussion.

The judgment in No. 12436 is affirmed. The judgment in No. 12437 is reversed and that cause remanded for a new trial.