475 F.2d 983
 154 U.S.App.D.C. 399
 Joseph LESTER, a minor, by and through his father and next
friend, Robert Lester, et al., Appellants
v.
H. Searl DUNN, Appellant Joseph LESTER, a minor, et al.
v.
H. Searl DUNN, Appellant Ann DeLaVal Dunn
 Nos. 71-1879, 71-1880.
 United States Court of Appeals,
District of Columbia Circuit.
 Feb. 21, 1973.
 
 James B. Goding, Washington, D. C., was on the brief for appellants in No. 71-1879 and appellees in No. 71-1880.
 John J. O'Neill, Jr., Washington, D. C., was on the brief for appellant in No. 71-1880 and appellees in No. 71-1879.
 Before WRIGHT and ROBB, Circuit Judges, and MATTHEWS,* Senior District Judge.
 PER CURIAM:
 
 
 1
 Plaintiffs-appellants claim that the trial court erred in denying their motion for a new trial in a personal injury action, the ground of the motion being that the jury's award of damages in the amount of $1,000 for the injured boy's father and nothing for the injured boy himself was arbitrary as a matter of law. Defendant-appellee has cross-appealed, contesting the District Court's denial of his motion for judgment notwithstanding the verdict. Also in dispute is the propriety of a directed verdict entered by the District Court against one of the plaintiffs, Susan Lester, the mother of the injured boy. We reverse the denial of a new trial and the directed verdict against Mrs. Lester, and affirm the denial of cross-appellant's motion for judgment notwithstanding the verdict.
 
 
 2
 The facts relating to the liability of cross-appellant are set out at length in our prior decision in this case and need only be summarized here. See Lester v. Dunn, 141 U.S.App.D.C. 146, 436 F.2d 300 (1970). Joseph Lester, a nine-year-old boy, was injured when he fell from a "Tarzan swing" rigged up in the Dunns' back yard. The evidence of liability, which the jury must have accepted since it found for plaintiffs, indicated that Joseph was an invited guest of Mr. Dunn's son, that the swing involved an unreasonable risk to children in that when allowed to swing forward its arc ended some 22 feet above a creek, that Mr. Dunn knew of the risk as he had seen children using the swing and knew that two children had already hurt themselves falling from it, and that Mr. Dunn failed to take reasonable care either to make the swing safe or to warn Joseph of the danger.
 
 
 3
 Much of the evidence of damages was either stipulated or uncontroverted. Mr. Lester, the boy's father, claimed out-of-pocket hospital expenses amounting to $3,390. He also claimed out-of-pocket expenses for taxicabs, parking fees and baby-sitter charges which he and Mrs. Lester spent in order to visit Joseph in the hospital over a period of six weeks. These expenses, added to those for orthopedic devices, amounted to another $870, bringing total out-of-pocket expenses to $4,260. The injured boy himself claimed damages for his pain and suffering. The uncontroverted evidence showed that Joseph suffered a comminuted fracture of the right thigh, a serious and painful injury. He was in a hospital, in traction with a pin through the bone of his leg, for about six weeks and was at home in a cast for some five weeks more. He was permanently disabled in that one leg was slightly shorter than the other; in addition, there was a slight limp, inability to squat, and a 20-degree limitation of full flexion of the right knee.
 
 
 4
 Both Mr. and Mrs. Lester sought damages based on the allegation that they "have been and will be obligated to spend considerable time in taking care of their minor son at home interfering with the normal and usual living in plaintiffs' home and causing plaintiff Robert Lester to lose time from his usual and gainful occupation, and all to their great damage." The trial court felt that this kind of injury was "damnum absque injuria" in the eyes of the law. Since all of Mrs. Lester's claim for damages fell within this category, the court granted a directed verdict against her. To ensure that the jurors would not consider these items as recoverable elements of damage with respect to Mr. Lester, the court prevented plaintiffs from introducing evidence as to this aspect of the case, and refused a jury instruction which would have directed that Mr. Lester be compensated for "the inconvenience and interference with his usual and normal activities which you find to have been caused by the injuries sustained by his minor son."
 
 
 5
 The jury returned separate verdicts as to the claims of the two remaining plaintiffs, Joseph Lester and his father. The jury found for both plaintiffs on the issue of liability and awarded Joseph $0 and Mr. Lester $1,000.
 
 
 6
 * That the court acted properly in denying appellee's motion for judgment notwithstanding the verdict was settled in our earlier opinion, where we held that the District Court had erred in granting a directed verdict for the defendant. Judgment notwithstanding the verdict is nothing more than a directed verdict granted after, rather than before, the jury has had an opportunity to bring in a verdict. See Rule 50(b), Fed.R.Civ.P. Since we earlier held "there was a case for the jury" and that a directed verdict was improper, it is clear that the court acted properly in denying the motion for judgment notwithstanding the verdict.
 
 II
 
 7
 With respect to the claims of Mr. and Mrs. Lester for the time they spent caring for Joseph, for the interference with their normal and usual living, and for loss of income to Mr. Lester because he had to lose time from work in order to visit his son in the hospital, it was wrong to label all these items mere "inconveniences" and we think some of the claimed items were compensable in damages.
 
 
 8
 All parties have agreed that the law to be applied in this case is that of the State of Maryland, the place where the tort occurred. The Supreme Court of Maryland decided long ago that when a minor is injured his mother is entitled to recover for the care and labor of nursing him. See County Commissioners of Harford County v. Hamilton, 60 Md. 340 (1883). This is consistent with the generally accepted view. Where a child is injured, the parent may recover "the reasonable expenses of procuring medical treatment and care" and where the parent provides that care him- or herself, "[t]he value of the parent's own services, as nurse or otherwise, is recoverable * * *." C. McCormick, Law of Damages 328-329 & n.6 (1935), and cases there cited. Where "circumstances render it necessary or advisable for the parent to quit work to attend the child, rather than employ another to attend him, it would seem that the parent should recover the loss of wages." Id. at 329 n.6.
 
 
 9
 We think Mrs. Lester's claim for damages should have gone to the jury. Plaintiffs would have shown that, under doctor's directions, Mrs. Lester visited Joseph in the hospital three times a day, spending about an hour each time, including commuting time. When Joseph came home, he was in a cast covering most of his body from his armpits to his toes. He was, in the words of the doctor, "like a solid piece of rock * * * about 5 feet long * * *." Mrs. Lester would have shown the jury that his care required her almost constant attendance, and she is entitled to compensation for those services just as if she had hired a nurse to assist her son rather than doing it hereself. Similarly, the above principles would allow Mr. Lester to obtain damages for a loss in income caused by his having to take time off from work in order to care for Joseph. Of course, this is not to say that Joseph's parents have any right to recover for the mental anguish or suffering caused them by his injury. See generally W. Prosser, Law of Torts 333-335 (4th ed. 1971). But they do have a right to be compensated for the services they provided above and beyond those normally incident to the parent-child relationship.[1]
 
 III
 
 10
 Although the question of damages is within the province of the jury, a jury verdict should be set aside when it is so inadequate as to indicate prejudice, passion or partiality on the part of the jury, or where it must have been based on oversight, mistake or consideration of an improper element. See 25A C.J.S. Damages Sec. 196 at 262 (1966). In the present case, since the jury awarded Mr. Lester less than his stipulated out-of-pocket expenses, the award must have been based either on prejudice or on consideration of an improper factor. The jurors' decision to award the injured boy nothing at all, in light of the painful injury and the permanent partial disability demonstrated at trial, is simply arbitrary. Defendant has referred us to several cases in which a court sustained a jury's verdict where the jury found for the plaintiff and awarded zero damages, but these cases involve either situations where such a verdict may be interpreted as a verdict for the defendant, see Royal Indemnity Co. v. Island Lake Township, 177 Minn. 408, 409, 225 N.W. 291, 292 (1929), or where the facts of the case are such that no damages were in fact shown, see, e.g., Spears v. Hough, 8 Cir., 458 F.2d 529, 531 (1972). In this case, however, we cannot interpret the jury verdict as one for the defendant, since the jury did assess some damages against the defendant. Nor is this a case where no damages were proved, since counsel for the defendant conceded in his closing argument to the jury that, in addition to his painful injuries, the boy suffered some permanent disability. Where a jury has in fact assessed some damages, and where those damages are consistent with the uncontroverted evidence as to out-of-pocket loss, an appellate court is reluctant to upset the trial court's denial of a motion for a new trial merely because it feels that the pain and suffering merited a larger award. See, e.g., Rankin v. Shayne Brothers, Inc., 98 U.S.App.D.C. 214, 217, 234 F.2d 35, 38 (1956). But where, as in the present case, the verdict is inconsistent with stipulated evidence as to out-of-pocket loss, and where the jury arbitrarily abdicated its responsibility to assess damages for one of the plaintiffs, the interests of justice require a new trial. Since the irrationality of the jury's award here is such that even speculation as to why it acted as it did is unrewarding, the proper course is to have a new trial on all issues, rather than one limited to the question of damages. Therefore, the judgment is
 
 
 11
 Reversed and the case is remanded for a new trial.
 
 ROBB, Circuit Judge, dissenting:
 
 12
 As indicated in the court's opinion the decisions are uniform that when a child is injured a parent is entitled to recover from the tort-feasor the reasonable value of the care or attendance rendered by the parent to the child. See, in addition to the authorities cited by the majority, Johnson v. Rhuda, 156 Me. 370, 164 A.2d 675 (1960); Annot. 90 A.L.R.2d 1335 (1963); 59 Am.Jur.2d, Parent and Child, Sec. 120 (1971); 22 Am.Jur.2d, Damages, Sec. 207 (1971); 25 C.J.S. Damages Sec. 91(3) (1966). To this extent I agree with the majority. I do not agree, however, that the parent may recover wages or salary lost by her because of her attendance upon the child. She should recover only the amount for which reasonably competent nursing and attendance by others could have been obtained. For example, a motion picture actress who voluntarily withdraws from her lucrative occupation to care for her injured child should not be allowed to charge her loss of income to the defendant. Sedlock v. Trosper, 307 Ky. 369, 211 S.W.2d 147 (1948); Armstrong v. Onufrock, 75 Nev. 342, 341 P.2d 105, 76 A.L.R.2d 946 (1959); Johnson v. St. Paul & W. Coal Co., 131 Wis. 627, 111 N.W. 722 (1907); Barnes v. Keene, 132 N.Y. 13, 29 N.E. 1090 (Ct.App.1892). Cf. Adams v. Erickson, 394 F.2d 171 (10th Cir. 1968).
 
 
 13
 Assuming that the majority is entirely correct in its view of the law on these points I still cannot accept its conclusion. The flaw in the majority opinion is that the plaintiffs never presented a claim for the reasonable value of the care or attendance they rendered to their child, nor did they make any claim for lost wages. The statement of special damages which they filed listed no such items. Their counsel at trial repeatedly informed the court that their claim was only for damages for "an interference and deprivation of usual and normal activities of both of these parents". (TR. 108, 109, 110, 111, 133). Nothing was said about the reasonable value of the parents' services, nor was there any mention of lost wages, or any offer of proof on these subjects. Finally, the instruction on damages requested by the plaintiffs did not mention the possibility of any recovery of lost wages or compensation for the value of the parents' services. Thus, the district court's ruling on the claim actually presented was correct. The plaintiffs could not recover on the theory they advanced.
 
 
 14
 Now the majority recasts the theory of the plaintiffs' case, substituting a new proposition for the untenable one on which the plaintiffs relied. The majority intimates that plaintiffs' counsel may have been at fault in failing to focus upon a valid theory of recovery; but a litigant is bound by the actions of his counsel at trial and it is not for us to build a case for him.
 
 
 15
 Since the case is to be retried I agree with the majority that the proper course is to have a new trial on all issues, rather than one limited to the question of damages. Simmons v. Fish, 210 Mass. 563, 97 N.E. 102, 106 (1912). Nevertheless, I cannot agree that the verdict of the jury was so arbitrary that it must be reversed. The jury may well have believed that the disability of the minor plaintiff was slight, since he testified that he could "walk good" (TR. 53) and that although he could not squat and could not run and swim as fast as he could before the accident there was no change in his ability to get around and play. (TR. 25). He still played kickball and baseball, rode a bike and swam. (TR. 27). In short, although I might have reached a different conclusion I think the jury acted within the limits of its discretion.
 
 
 16
 A further explanation for the verdict is found in Exhibit 5, introduced in evidence by the plaintiffs to establish the medical expenses they had incurred. This exhibit is a statement on the stationary of Group Health Association, Inc., entitled "Statement for Insurance Reimbursement". A note from the forelady of the jury, which is in the file, reads "We would like to see all the exhibits introduced", indicating that the exhibit went to the jury room.
 
 
 17
 Exhibit 5 reflects that the plaintiffs paid less than $100 for the medical services rendered to the minor plaintiff; the balance of approximately $3,400 was paid by the insurance company. Conceivably, the jury believed that the plaintiffs should not recover for this balance which they had not paid. On this premise the award of $1,000 to the plaintiff father was no doubt made to cover the additional expenses, amounting to about $900, which he had proved. Of course, the plaintiffs were entitled to recover notwithstanding the payments by the insurance company, but they did not request an instruction to this effect and none was given. In these circumstances they are not in a position to complain that the jury made a mistake. Bryant v. Mathis, 107 U.S.App.D.C. 339, 278 F.2d 19 (1960). In that case the jury did not allow recovery for lost earnings although the uncontradicted testimony showed that the plaintiff had sustained such a loss. We held that the verdict was not "so arbitrary that it must be reversed as a matter of law." Explaining, we said: "Conceivably, the jury believed that appellant had been paid during her absence from work, and thus did not allow recovery for lost earnings. Although she was entitled to an instruction that lost wages are recoverable notwithstanding compensation from a collateral source, she requested no such instruction and none was given. . . ." (Citations omitted.) 107 U.S. App. D.C. at 340, 278 F.2d at 20. See also, Rankin v. Shayne Bros., Inc., 98 U.S.App.D.C. 214, 234 F.2d 35 (1956), a case in which we expressed "considerable wonderment" about a verdict, but refused to disturb an award of $123.90 for the death of an infant.
 
 
 18
 I respectfully dissent.
 
 
 
 *
 Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. Sec. 294(c) (1970)
 
 
 [1]
 Although the trial court asked plaintiffs' counsel to provide some legal authority for the principle that the boy's mother was entitled to compensation for the time spent caring for him after his injury, counsel failed to provide the trial court with the precedents which he now provides this court and upon which we rely in part in reversing the trial court. Indeed, plaintiffs' counsel failed to provide any legal authority on this point. Since this same failing of trial counsel was noted in our opinion on the first appeal of this case, see Lester v. Dunn, 141 U.S.App.D.C. 146, 148 n.1, 436 F.2d 300, 302 n.1 (1970), we take this opportunity to remind counsel that it is in the interest of fair and efficient administration of justice, as well as in the interest of his own clients, for counsel to prepare the legal aspects of his case prior to trial so the trial court can be fully advised of the legal principles upon which he relies