Rein J. VANDER ZEE, Appellant,

v.

Kimon T. KARABATSOS et al.

No. 77–1487.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1978.

Decided Dec. 21, 1978.

Rehearing Denied Feb. 8, 1979.

---

Walter T. Charlton, Washington, D. C., for appellant.

Kenneth A. Lazarus, Washington, D. C., with whom James J. Bierbower, Washington, D. C., was on the brief, for appellees.

Before TAMM and ROBB, Circuit Judges, and WILLIAM B. JONES,* Senior United States District Judge for the District of Columbia.

Opinion for the court filed by WILLIAM B. JONES, Senior District Judge.

WILLIAM B. JONES, Senior District Judge:

This case involves an alleged oral contract entered into between the plaintiff-appellant Rein J. Vander Zee and the defendant-appellee Kimon T. Karabatsos. In the trial below, the jury returned a verdict in favor of the plaintiff-appellant. The District Court then overturned the jury's determination by issuing a judgment notwithstanding the verdict (n. o. v.) pursuant to Federal Rule of Civil Procedure 50(b). The Court also contingently granted a new trial under Rule 50(c). Vander Zee has appealed from these rulings. For reasons stated

herein, we reverse the entry of judgment n. o. v. and remand for a decision on whether to grant a new trial limited to the issue of damages.

## I.  INTRODUCTION

The complaint in this action was brought by Rein J. Vander Zee, an attorney licensed to practice in the District of Columbia and Texas. Appellant Vander Zee is attempting to recover funds that allegedly are owed to him by Kimon Karabatsos, the defendant-appellee.

In early 1975, Vander Zee was approached by William H. Savage, President of Savage/Fogarty, a real estate management firm, in connection with certain leasing difficulties that faced the company. The two men were acquainted because they previously had shared law offices. On this occasion, Savage requested Vander Zee to assist the company in renegotiating a lease between the General Services Administration [hereinafter the "GSA"] and the Savage/Fogarty Company. The lease involved certain office space located at 1800 North Kent Street, Rosslyn, Virginia. The Savage/Fogarty Company had bought the property at a court ordered bankruptcy sale, and the previous owners' lease with the GSA required renegotiation in view of the bankruptcy and forced sale of the building.

Vander Zee declined Savage's request for direct assistance, explaining that extensive commitments in Texas left him with too little time to "keep on top of" the renegotiation sessions. Vander Zee did, however, offer to help find someone capable of advising Savage/Fogarty on the leasing matter.

Savage accepted Vander Zee's offer to refer a person capable of handling the GSA renegotiations. Indeed, according to Vander Zee, Savage suggested that Vander Zee be compensated for the referral service by splitting the fees eventually earned by the as yet undetermined third party. (Tr. at 94.) At trial, Savage denied making such a suggestion. (Tr. at 16–17.)

* Sitting by designation pursuant to 28 U.S.C. § 294(c).

Vander Zee began to consider candidates who might qualify for the leasing negotiations needed by the Savage/Fogarty Company. Appellant Vander Zee claims that his screening process stretched over a six week period, and involved consideration of approximately two hundred people. Only two individuals, however, actually were contacted. (Tr. at 128.)

During this period, Vander Zee solicited the advice of Oliver Dompierre, the assistant to the Minority in the United States Senate. Dompierre recommended the appellee, Kimon T. Karabatsos. Karabatsos was not a lawyer, but was a licensed real estate broker in Virginia who had been self-employed as a business and government consultant for the past six years.

Vander Zee then contacted Karabatsos, and discussed the matter with him. Having concluded that Karabatsos was an acceptable candidate for the job, Vander Zee arranged a meeting between Karabatsos and William J. Fogarty, who appeared on behalf of the Savage/Fogarty Company. The meeting took place at the "116 Club," a private club in which both Vander Zee and Karabatsos were members.

Subsequent to this introduction, Vander Zee invited Karabatsos to his home for a breakfast meeting. It was on this occasion that the parties allegedly entered an oral agreement that entitled Vander Zee to one third of all compensation earned by Karabatsos for work done in renegotiating the GSA lease. (Tr. at 57–59; 99–100.)

Vander Zee brought suit in the District Court to enforce the oral agreement. A jury returned a verdict in favor of the plaintiff-appellant Vander Zee, awarding him "[o]ne third (⅓) of total monies received by the defendant and future monies to be received during the term of the lease with G.S.A." The District Judge overturned the jury finding by entering a judgment notwithstanding the verdict. He concluded that there was no substantial evidence of an oral agreement for the splitting of fees between Vander Zee and Karabatsos and that even if a contract did exist, it could not be enforced because it would con-

stitute illegal "influence peddling" in the procurement of government contracts. The District Court also granted the defendant's motion for a new trial on the grounds that the verdict was against the weight of the evidence. It did not reach the defendant's alternative grounds for a new trial, excessive damages.

## II. THE JUDGMENT NOTWITHSTANDING THE VERDICT

■ A motion for judgment notwithstanding the verdict should not be granted unless the evidence, together with all inferences that can reasonably be drawn therefrom is so one-sided that reasonable men could not disagree on the verdict. *Luck v. Baltimore & Ohio Railroad Co.*, 166 U.S. App.D.C. 283, 510 F.2d 633 (1975); *O'Neil v. W. R. Grace & Co.*, 410 F.2d 908 (5th Cir. 1969); *Bennett v. D.C. Transit System, Inc.*, 111 U.S.App.D.C. 411, 298 F.2d 325 (1962); *McWilliams v. Shepard*, 75 U.S.App.D.C. 334, 127 F.2d 18 (1942); *McCarthy v. Cahill*, 249 F.Supp. 194 (D.D.C.1966); 5A J. Moore, Federal Practice ¶ 50.07[2] (3d ed. 1977). As this Court pointed out in *Lester v. Dunn*, 154 U.S.App.D.C. 399, 475 F.2d 983 (1973), the standard for awarding a judgment n. o. v. is the same as that applied when ruling on a motion for a directed verdict. And in *Alden v. Providence Hospital*, 127 U.S.App. D.C. 214, 216, 382 F.2d 163, 165 (1967), we carefully delineated that standard:

> The test to be applied in ruling on a motion for a directed verdict made at the close of the plaintiff's case is clear and uncontested in this litigation. Unless the evidence, along with all inferences reasonably to be drawn therefrom, when viewed in the light most favorable to the plaintiff is such that reasonable jurors in fair and impartial exercise of their judgment could not reasonably disagree in finding for the defendant, the motion must be denied.

*See also Princemont Construction Co. v. Smith*, 140 U.S.App.D.C. 111, 433 F.2d 1217 (1970).

■ Application of this standard to the facts of the case before us compels this

Court to conclude that the District Court improvidently granted a judgment n. o. v. The record supplies ample evidence to support a jury finding that Vander Zee and Karabatsos entered into an enforceable oral contract. Specifically, the jurors heard Vander Zee testify that Karabatsos agreed to a division of fees at their breakfast meeting in consideration for referral of the Savage/Fogarty business.[1] Rita Crossen backed up Vander Zee's account of the breakfast meeting. Mrs. Crossen, who was married to Vander Zee at the time of the transaction, was present at the meeting and testified that Karabatsos explicitly agreed to a split of the fees.[2]

In addition to this direct testimony, the jury could have drawn inferences from other evidence to conclude that an oral contract existed between the parties. For example, the very occurrence of an early-morning breakfast meeting at the home of Vander Zee, on the day after Karabatsos' introduction to Fogarty, might itself imply that an important discussion between Vander Zee and Karabatsos took place at the time. Additionally, Dompierre's testimony concerning discussions with Karabatsos about a fee splitting arrangement with Vander Zee might support an inference that an oral contract existed between the parties.[3]

■ Thus, the evidence presented before the Court, along with all reasonable inferences drawn from it, was not so one-sided that no reasonable jurors could find that an oral contract existed between Vander Zee and Karabatsos. The jury properly could have concluded, as it did, that words exchanged at the breakfast meeting manifested the requisite mutual assent of Vander Zee and Karabatsos to enter into a binding contract.[4] A judgment n. o. v. therefore was not appropriate. As Judge Goldberg stated in *Powell v. Lititz Mutual Insurance Co.*, 419 F.2d 62, 64 (5th Cir. 1969):

1. On direct examination, when asked whether he and Karabatsos had come to an agreement at their breakfast meeting, Vander Zee responded: "Yes, we did. I told Mr. Karabatsos that if he was interested in pursuing the work, that I would see that he got the work, and that the agreement would be that he would make a division of fees and give me one third of the gross fee to me [sic] as consideration for seeing that he got the business. I think his actual words were, 'No problem at all.' Something to that effect." (Tr. at 99–100).

2. Mrs. Crossen recounted the crucial meeting as follows:
   Q. "Did there come a time in the morning when you began to pay attention? [to the conversation between Vander Zee, her husband, and Karabatsos].
   A. Yes.
   Q. Would you explain that to the Court, please?
   A. Well, my ears perked up, I guess you might say, when they started discussing the arrangement of fee between the two of them, my husband referring the business to Mr. Karabatsos. I remember that very well.
   Q. And what was the substance of that conversation, if you recall it?
   A. Rein, my husband, said to Mr. Karabatsos, 'It's a usual referral fee between the two of us, a third for me and two-thirds for you.' At that moment I was handing Mr. Karabatsos a second cup of coffee when he said, Rein said, 'Is that agreeable with you?' And Kim said, 'Yes, of course.' " (Tr. at 58–59.)

3. On direct examination, Mr. Dompierre testified, in part, as follows:
   Q. "Did there come a time in your office when Mr. Karabatsos admitted to a financial arrangement between the two? [Vander Zee and Karabatsos]
   A. No. I told him that Mr. Vander Zee expected part of the fee.
   Q. And what was his reply?
   A. He had no objection to Mr. Vander Zee making part of the fee. That's what he told me." (Tr. at 75.)

4. Such a contract would not be void as against public policy. It did not violate 41 U.S.C. § 254(a), the statutory proscription against government "influence peddling." That provision prohibits a contractor such as Savage/Fogarty from employing someone to solicit or secure a government contract on a contingent fee basis. In the present case, however, Savage/Fogarty entered no contingent fee arrangement with any party in an attempt to procure the GSA leasing contract. Their ownership of the Rosslyn office building put them in a direct negotiating position with the GSA. The contingent fee arrangement between Karabatsos and Vander Zee thus was unrelated to the procurement of a government contract. Indeed, throughout the trial, representatives of the Savage/Fogarty Company denied entering into any contingent fee arrangement with Vander Zee. Any such agreement was a matter between only Karabatsos and Vander Zee.

A judgment notwithstanding the verdict is permissible only when without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict. *Brady v. Southern Railroad,* 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239 (1943). In other words, where, as here, there is substantial conflicting evidence a judgment notwithstanding the verdict is improper.

### III. THE DECISION TO GRANT A NEW TRIAL

Pursuant to Rule 50(c),[5] the District Judge made a conditional decision on the defendant's motion for a new trial. He granted the motion, on the grounds that the jury's verdict was against the weight of the evidence and was void, being a "miscarriage of justice." He did not reach the alternative grounds of excessive damages that the defendants advanced.

As implied by Rule 50(c)'s language, this Court has the duty to review the appropriateness of the trial court's conditional grant of a new trial. The rule states, in part, that "the new trial shall proceed *unless the appellate court has otherwise ordered,*" (emphasis added) and the Supreme Court has interpreted this language as giving the appellate court the power to grant or deny a new trial in appropriate cases. *Neely v. Eby Construction Co.,* 386 U.S. 317, 323, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967).

■ Generally speaking, we review the trial court's Rule 50(c) decision on the motion for a new trial for any abuse of discretion. *Luck v. Baltimore & Ohio Railroad Co., supra; Ryen v. Owens,* 144 U.S.App. D.C. 332, 446 F.2d 1333 (1971); *Taylor v. Washington Terminal Co.,* 133 U.S.App.D.C.

110, 409 F.2d 145 (1969); *Rankin v. Shayne Brothers, Inc.,* 98 U.S.App.D.C. 214, 239 F.2d 35 (1956). At one time, this standard of review was applied with little force so that the trial court's decision was nearly unassailable. The majority in *Bennett v. D. C. Transit System, Inc., supra,* 111 U.S.App. D.C. at 412, 298 F.2d at 326, for example, held that "the ruling of a trial judge on an alternative motion for a new trial is ordinarily not *reviewable* . . . . It is appropriate that [the trial court's] . . . discretion be respected." (emphasis in text) *See also Eastern Air Lines v. Union Trust Co.,* 99 U.S.App.D.C. 205, 239 F.2d 25 (1957). In recent years, however, this Circuit has followed others in developing a more sophisticated review of new trial determinations. The landmark Third Circuit case of *Lind v. Schenley Industries, Inc.,* 278 F.2d 79, *cert. denied,* 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960), started the trend by recognizing that the degree of appellate scrutiny of new trial rulings should depend on the reasons given for the awarding of a new trial. The court distinguished between cases in which a new trial is granted because of some legal error, and cases in which the trial judge simply reweighed evidence already submitted to a jury. While grants of new trial motions based on legal error should be routinely affirmed, the *Lind* court found the second context to be more problematic. As it explained:

[When the trial court grants a new trial on a "weight of evidence" theory,] the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. It then becomes the duty of the appellate [court] tribunal to exercise a closer degree of scrutiny and supervi-

---

**5.** Rule 50(c)(1) of the Federal Rules of Civil Procedure states:

"If the motion for judgment notwithstanding the verdict, provided for in subdivision (b) of this rule, is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does

not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered. In case the motion for a new trial has been conditionally denied, the appellee on appeal may assert error in that denial; and if the judgment is reversed on appeal, subsequent proceedings shall be in accordance with the order of the appellate court."

sion than is the case where a new trial is granted because of some undesirable or pernicious influence obtruding into the trial. Such a close scrutiny is required in order to protect the litigants' right to jury trial. 278 F.2d at 90.

■ This Circuit has adopted the *Lind* approach to appellate review of new trial orders in *Taylor v. Washington Terminal Co., supra.*[6] As in *Lind,* the *Taylor* court emphasized the concern that a judge's nullification of the jury's verdict may encroach on the jury's important fact-finding function.[7] In view of this danger, we noted that closer appellate scrutiny is required when the trial court *grants* a new trial then when the court denied the motion and stands by the jury's conclusion.[8] The *Lind* court, of course, went one step further by pointing out that some reasons for granting new trials deserve more deference than others. When the trial court has ordered a new trial because of legal error, the appellate court should be more inclined to affirm the grant than when the trial court simply weighs the evidence differently than the jury and orders a new trial because the verdict is "against the weight of the evidence."[9]

■ Applying this standard to the case before the court, we find that we must overturn the trial court's grant for a new trial insofar as it is based on the grounds that the jury's verdict is against the weight of the evidence. As discussed above in the context of the judgment n. o. v., there was testimony to support the jurors' decision that an oral contract existed between Vander Zee and Karabatsos. The trial court's contrary view of the credibility of the witnesses does not justify the granting of a new trial.

The District Court also granted a new trial in order to prevent "a miscarriage of justice." We conclude that this also is an inadequate rationale for a new trial in view of our determination that the alleged contract between Vander Zee and Karabatsos would be valid and enforceable.[10] More troubling, however, is the fact that the District Court specifically did not reach the question whether a new trial should be granted on the issue of damages. Although we have registered our reluctance to perfunctorily affirm grants of new trials based on excessive damages, *Taylor v. Washington Terminal Co., supra,* we recognize that the District Court should have an opportunity to consider this ground for a new trial. *Ryen v. Owens, supra; Rankin v. Shayne Brothers, Inc., supra* ; 6A J. Moore, Federal Practice ¶ 59.08[6] (3 ed. 1974).

Thus, we must remand this case so that the District Court can make its determination whether a new trial on the damages issue is appropriate.

---

**6.** The court in *Taylor v. Washington Terminal Co., supra,* overturned a trial judge's order for a new trial that was based on excessive damages. At footnote 13 of the opinion, Judge Wright noted that in doing so, "we follow the lead taken by the Third Circuit [in the *Lind* case]." For a discussion of the *Taylor* court's rationale, see text accompanying notes 7 & 8, *infra.*

Judge Fahy's dissent in *Bennett v. D. C. Transit System, Inc., supra,* was a precursor to the *Taylor* opinion. In his dissent, Judge Fahy took issue with the majority's conclusion that the trial court's order for a new trial, based on the judge's conclusion that the verdict was against the weight of the evidence, should be upheld. He stated that "It is in derogation of the jury function, as it seems to me, for the conclusion they reached, attributable to no error of law, not to be given effect." *Bennett v. D. C. Transit System, Inc., supra,* 111 U.S.App. D.C. at 413, 298 F.2d at 327. Judge Fahy then quoted extensively from *Lind v. Schenley Industries, Inc., supra,* concluding that in the case before him, as in *Lind,* the evidence was sufficient to enable the jury to find for the plaintiff, and thus the jury's verdict should not be abrogated by a new trial order.

**7.** 133 U.S.App.D.C. at 113, 409 F.2d at 148.

**8.** *Id.*

**9.** 278 F.2d at 90.

**10.** *See* note 4, *supra.*