44 F.3d 1031
 310 U.S.App.D.C. 142
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Robert BURNS, Appellant/Cross-Appellee,
v.
William LONG, Administrator, District of Columbia Detention
Center, et al., Appellees/Cross-Appellants.
 Nos. 92-7062, 92-7063.
 United States Court of Appeals, District of Columbia Circuit.
 Nov. 29, 1994.
 
 Before: WALD, WILLIAMS and HENDERSON, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These cases were heard on the record from the United States District Court for the District of Columbia and on the briefs and arguments by counsel. The court has accorded the arguments full consideration and has determined the issues presented occasion no need for a published opinion. See D.C.Cir.Rule 36(b). For the reasons set out in the accompanying memorandum, it is
 
 
 2
 ORDERED that the judgment from which these appeals have been taken be affirmed.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a)(1).
 
 
 4
 Per Curiam.
 
 ATTACHMENT
 MEMORANDUM
 
 5
 Appellant Robert H. Burns was confined in the District of Columbia Detention Center (Jail) from December 23, 1983 to July 24, 1985, while awaiting trial on federal narcotics charges. He commenced this action in 1984, seeking a writ requiring the Jail to provide him with a kosher, or at least pork-free, diet to which he alleged he, as a practicing Jew, was entitled under the first amendment. He later filed amended complaints to seek money damages under 42 U.S.C. Sec. 1983 against the District of Columbia (District), the Jail's Administrator, William Long, its Assistant Director for Detention Services, Marion Strickland, and the Chief of the Office of Food Services for the District's Department of Corrections, Ozzie Hubbard. The case was referred to a magistrate judge who, before trial, denied Burns's motion for class certification and limited his first amendment claim to denial of one pork-free meal per day. At the same time, he deferred ruling on the individual defendants' motion to dismiss on the ground of qualified immunity. On December 2, 1991, following a three-day trial, the jury returned a verdict in Burns's favor against the three individual defendants, awarding compensatory damages of $9,700 and punitive damages of $4,850. It found the District not liable. Afterward the magistrate judge denied the individual defendants' motion for judgment notwithstanding the verdict (j.n.o.v.) on liability and compensatory damages but granted the motion as to the punitive damage award. The magistrate judge declined to rule on Burns's motion for j.n.o.v. against the District.
 
 
 6
 In this appeal Burns challenges the magistrate judge's denial of class certification, the pretrial limitation of his claim and the failure to grant his motion for j.n.o.v. against the District.[1] In addition, the individual defendants, Long, Strickland and Hubbard, cross-appeal the denial of their j.n.o.v. motion on liability. For the following reasons, we reject all asserted grounds for appeal and affirm the district court's judgment in toto. In reaching our conclusion we address first the individual defendants' cross-appeal.
 
 I.
 
 7
 Long, Strickland and Hubbard appeal the judgment against them on the single ground that the magistrate judge should have granted their motion for j.n.o.v. based on qualified immunity because they reasonably relied on safeguards they had established to ensure that inmates received one pork-free meal each day. The standard for reviewing a j.n.o.v. is the same as for granting it: A j.n.o.v. may be granted and upheld "only when the evidence, together with all inferences that can reasonably be drawn therefrom[,] is so one-sided [in favor of the moving party] that reasonable men could not disagree on the verdict." Tavoulareas v. Piro, 817 F.2d 762, 776 (D.C.Cir.), cert. denied, 484 U.S. 870 (1987); see also Vander Zee v. Karabatsos, 589 F.2d 723, 726 (D.C.Cir.1978), cert. denied, 441 U.S. 962 (1979). Under this standard, the magistrate judge properly denied the defendants' j.n.o.v. motion. The qualified immunity doctrine provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). On the other hand, "[i]f the law was clearly established, the immunity defense should fail, since a reasonably competent public official should know the law governing his conduct." Id. at 818-19. Because the jury's findings affecting qualified immunity are supported by substantial evidence and Burns's claimed constitutional right and the defendants' corresponding constitutional duties were clearly established at the time of Burns's incarceration, the defendants were not entitled to qualified immunity.[2]
 
 
 8
 "It is well established that a governmental officer may be held liable in damages for constitutional wrongs engendered by his failure to supervise or train subordinates adequately," Haynesworth v. Miller, 820 F.2d 1245, 1259 (D.C.Cir.1987), and was so at the time of Burns's confinement in the Jail, see Rizzo v. Goode, 423 U.S. 362 (1976); Carter v. Carlson, 447 F.2d 358, 360 (D.C.Cir.1971), rev'd on other grounds sub nom. District of Columbia v. Carter, 409 U.S. 418 (1973). "[I]n order to find a supervisory official personally liable in damages for the unconstitutional acts of his subordinate, it must be shown that he was responsible for supervising the wrongdoer; that a duty to instruct the subordinate to prevent constitutional harm arose from the surrounding circumstances; and that, as a result of the official's failure to instruct, the plaintiff was harmed in the manner threatened." Haynesworth, 820 F.2d at 1262. The cross-appellants do not now contest that Burns had a clearly established constitutional right to at least one pork-free meal a day[3] or that he was in fact deprived of that right by subordinates under their supervision. Instead, they assert that they were under no clearly established duty to do any more than they did to protect his rights, namely to establish an official cyclical menu for the Jail that provided for one pork-free meal per day and to appoint a "Coordinator of Islamic Affairs" to handle complaints from Muslim inmates. We disagree.
 
 
 9
 "[T]he existence of a duty to supervise to prevent a particular harm is a question of fact rather than law, and depends on the particulars of each dispute." Id. Under the facts as apparently found by the jury based on the trial testimony, we conclude the cross-appellants were under a duty to do more than they did and that the failure to satisfy that duty caused Burns's injuries. Viewed in Burns's favor, the trial evidence established widespread violation of the District's official one pork-free meal per day policy. According to the testimony of Burns and other inmates, including one of the Jail's kitchen workers, most of the food served contained pork in some form, Appendix (App.) 305, 339, 341, 381-82, 389, 403, 416. Further, because of the manner in which meals were prepared and served, the pork components were often intermingled with the non-pork. App. 314-15, 389, 397. As a result, the inmates complained repeatedly about their diet's pork content: to correctional officers, App. 305-06, 316, to the Islamic Coordinator, App. 313, 316, to Hubbard, App. 316, to Long, 384-85, 396, 412-14, and to Strickland, App. 412-14. In addition, Hubbard, whose office was in the Jail building, testified that she visited the Jail's kitchen weekly, App. 457, and she was therefore in a position to personally observe the content of the meals and the manner in which they were prepared and served. Under these circumstances, the cross-appellants could not reasonably rely on their alleged safeguards to ensure compliance with the Jail's policy and the inmates' first amendment rights. In short, the jury could reasonably have found that all three individual defendants knew or should have known there were problems with the pork content of the meals and, had they made the slightest inquiry, would have learned that the Jail's one pork-free meal policy and Burns's clearly established right to religious dietary accommodation were being violated. Thus, the cross-appellants are not entitled to qualified immunity and the verdicts against them stand. We next turn to Burns's appeal.
 
 II.
 
 10
 Burns first appeals the pretrial limitation of his claim to deprivation of a single daily pork-free meal rather than a completely pork-free diet, as his initial petition and amended complaints requested. Burns's position, as we understand it, is that the prison's single pork-free meal policy inadequately accommodates his first amendment right to practice his religion and, in addition, violates the eighth amendment prohibition against cruel and unusual punishment because it forces inmates such as himself to refrain from eating much of the two daily non-pork-free meals and thereby suffer malnourishment. We find this reasoning unpersuasive.
 
 
 11
 First, we cannot conclude that the District's dietary policy violated Burns's first amendment right to practice his religion. A particular prison policy or regulation that impinges on an inmate's constitutional rights is nevertheless valid if it is "reasonably related to legitimate penological interests." See Thornburgh v. Abbott, 490 U.S. 401 (1989); O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987); Turner v. Safley, 482 U.S. 78 (1987). Other courts have held that under this standard the plaintiff bears the burden of showing a regulation is not reasonably related to a legitimate penological interests. Covino v. Patrissi, 967 F.2d 73, 79 (2d Cir.1992); see also Hause v. Vaught, 993 F.2d 1079, 1082 (4th Cir.1993). Burns not only failed to meet this burden below but never even directed the court's attention to the reasonable relationship inquiry. Accordingly, he is not entitled to a second opportunity to litigate that issue.[4]
 
 
 12
 As for the eighth amendment claim, Burns presented no evidence that, had the Jail actually followed its policy of providing one pork-free meal each day, that meal in combination with non-pork elements of other meals would have been so nutritionally inadequate as to constitute cruel and unusual punishment. In fact, the trial testimony suggests otherwise. At trial Burns and other former inmates of the Jail testified that they avoided eating all pork served during their incarceration. Nevertheless, while some of the witnesses cited slight weight loss, none reported the kind of serious effects necessary to implicate the eighth amendment. See Wilson v. Seiner, 501 U.S. 294, 298 (1991) (to violate eighth amendment, conditions of confinement must "constitute[ ] the 'unnecessary and wanton infliction of pain' " and "deprivations denying the 'minimal civilized measure of life's necessities' ") (quoting Rhodes v. Chapman, 452 U.S. 337, 348-49, 346 (1981)).
 
 
 13
 Burns next challenges the denial of his class action certification motion. We reject this argument as well. The magistrate judge offered two bases for the denial: (1) there were "certainly not common questions of fact" among the putative class members' claims because "each particular claim is separate and distinct as to periods of time in which they have served in the prison facilities that are issue [sic]," App. 144, and (2) "more importantly, the Court believes that the plaintiff is not capable of fairly and adequately protecting the interests of the class," id. The magistrate judge's ruling is reviewable only for abuse of discretion. Hartman v. Duffey, 19 F.3d 1459, 1471 (D.C.Cir.1994). We find none here. The court's second ground for denial is clearly supported by the facts. Although a former lawyer, at the time of trial Burns was a pro se prisoner whose representational abilities were hampered by both his confinement and his long absence from the practicing bar.[5] In any event, Burns has failed to establish how the class certification denial impaired his ability to litigate his own claims, and successfully at that. Cf. Dellums v. Powell, 566 F.2d 167, 189 n. 56 (D.C.Cir.1977) ("[I]n the absence of a showing that [class] certification affected the 'substantial rights of the parties,' Rule 61, Fed.R.Civ.P., it is doubtful that reversal of certification on appeal would ever be appropriate.").
 
 
 14
 Next, Burns appeals the granting of the defendants' motion for j.n.o.v. as to the punitive damage award. Under the applicable standard, set out above, we conclude that the magistrate judge properly granted the motion.
 
 
 15
 "A jury may be permitted to assess punitive damages in an action under Sec. 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). The magistrate judge concluded that, although the trial evidence was "sufficient to hold the defendants liable for compensatory damages," it "d[id] not rise to a level of culpability warranting punitive damages." He explained:
 
 
 16
 [E]ven though the defendants objectively should have known that the service of food at the prison violated the plaintiff's right to practice his religion, punitive damages are unwarranted because there is no evidence that they actually knew that the plaintiff had a First Amendment right to pork-free meals or that the food preparation and service at the Jail violated such a right. Nor is the evidence sufficient to show callous or reckless disregard of his rights. Therefore, the defendants' conduct does not call for deterrence and punishment beyond that provided by the compensatory damages and the award of punitive damages must be set aside.
 
 
 17
 App. 676. We agree with this assessment of the evidence. While the record is replete with evidence that the individual defendants should have known Burns's first amendment right was being violated, there is no evidence of any actual knowledge. The record contains no clear description, for example, of any complaint alleging the lack of one pork-free meal a day. In fact, where the testimony describes the complaints' contents at all, it asserts the Jail failed to provide a completely pork-free or a kosher diet,[6] an omission for which, as we have already explained, the individual defendants cannot be held liable. Further, Hubbard testified that, despite her weekly visits to the Jail's kitchen, she was unaware that the official policy was not being followed. App. 456-58. Thus, while the defendants may have violated Burns's first amendment right to practice his religion in failing to investigate or adequately supervise the Jail's food service, their inaction does not constitute callous or reckless disregard for that right, the minimum standard for awarding punitives under Smith v. Wade. As this court has noted, "[s]ince punitive damages require a finding of malice or reckless disregard for the rights of others, the defendant's motivations are crucial." Nader v. Allegheny Airlines, Inc., 512 F.2d 527, 541 (D.C.Cir.1975), rev'd on other ground, 426 U.S. 290 (1976). Because Burns presented no evidence that the defendants actually knew Burns's clearly established right to one pork-free meal per day was being violated nor any other evidence of bad motive on their parts, the punitive damage award cannot be sustained and was properly set aside by the magistrate judge.
 
 
 18
 Finally, Burns appeals the magistrate judge's failure to rule on his motion for judgment notwithstanding the verdict in the District's favor. The magistrate judge declined to address Burns's motion for two reasons: (1) he found it had not been timely filed and (2) he concluded that, because Burns had already filed a notice of appeal, the district court no longer had jurisdiction over the motion. Regarding the first ground, we note that there is evidence that Burns's motion was mailed on time and perhaps simply not timely filed by court employees. See App. at 650-52; App. of Appellants/Cross-Appellees filed 9/24/93 at 1, 3. Further, the pendency of that motion, if timely filed, rendered his subsequent notice of appeal "of no effect" under Federal Rule of Appellate Procedure 4(a)(4) as then formulated.[7] Nevertheless, any error in failing to rule on the motion was harmless because the motion should properly have been denied in any event.
 
 
 19
 The jury's findings and our conclusions regarding the supervisory liability of the individual defendants do not dictate a finding of liability on the District's part. As we have previously observed, "the problem of determining whether a governmental entity should be charged with responsibility for the acts of its employees is conceptually distinct from the question whether the wrongs of one municipal worker should be imputed to another." Haynesworth, 820 F.2d at 1262. Governmental liability attaches under section 1983 only if a constitutional or statutory violation is caused by the decisions of "those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular ... violation at issue." Jett v. Dallas Independent School Dist., 491 U.S. 791, 737 (1988).[8] Here, there is no evidence in the record that any of the three defendants, including Hubbard, had final decisionmaking authority over the Jail's diet generally and, more specifically, over the accommodation of particular inmates' religious dietary requirements. To the contrary, Hubbard's testimony suggests that the one pork-free meal per day policy originated higher in the District's Department of Corrections. See App. 473 ("I was following the Court order to provide one pork-free meal per day. That is what I did according to the policies and guidelines of the Court and the D.C. Department of Corrections.") (emphasis added). Thus, the magistrate judge properly denied Burns's motion for j.n.o.v. against the District.
 
 
 
 [1]
 Burns also appeals a number of "procedural" rulings but we find those challenges entirely without merit and therefore decline to address them here
 
 
 [2]
 Burns contends the defendants waived their right to qualified immunity by failing to raise the defense until shortly before trial, a position with which the magistrate judge agreed. It is true that qualified immunity is an affirmative defense that must be pleaded by the defendant official, Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982); Gomez v. Toledo, 446 U.S. 635, 640 (1980), and that "failure to plead an affirmative defense generally waives the defense," Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc., 513 F.2d 407, 420 (D.C.Cir.1975). Nevertheless, because Burns failed to object before trial to the failure to plead qualified immunity and evidence was admitted at trial to support the defense, it appears that the defense should be treated as having been pleaded. See Charpentier v. Godsil, 937 F.2d 859, 863-64 (3d Cir.1991) ("Failure to raise an affirmative defense by responsive pleading or appropriate motion, however, does not always result in waiver.... [U]nder Fed.R.Civ.P. 15(c), issues tried by the express or implied consent of the parties are 'treated in all respects as if they had been raised in the pleadings.' "); Lucas v. United States, 807 F.2d 414, 418 (5th Cir.1986) ("[T]he defendant does not waive an affirmative defense if '[h]e raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond.' ") (quoting Allied Chem. Corp. v. MacKay, 695 F.2d 854, 855-56 (5th Cir.1983)); Fey v. Walston & Co., 493 F.2d 1036, 1050 (7th Cir.1974) ("The affirmative defenses of waiver and estoppel were not pleaded as required by Rule 8(c), Fed.R.Civ.P. However, if proof tending to establish such defenses was received without objection, defendants' answer could be deemed amended to conform to such proof.") (citing Fed.R.Civ.P. 15(b)); cf. Dellums v. Powell, 566 F.2d 167, 178 (D.C.Cir.1977) (finding estoppel defense waived because it was not "asserted by an amended answer" and there was no "evidence introduced to which the pleadings might be conformed") (citing Fed.R.Civ.P. 15(b))
 
 
 [3]
 This court had long ago declared that "the bare minimum that jail authorities, with or without specific request, are constitutionally required to do" for Muslim inmates, whose religion also proscribes pork consumption, is to provide "one full-course pork-free diet once a day ... if this concession is feasible from the standpoint of prison management." Barnett v. Rodgers, 410 F.2d 995, 1002 (D.C.Cir.1969)
 
 
 [4]
 Qualified immunity further shields the individual defendants, although not the District, from liability or suit on this claim because at the time of his confinement Burns enjoyed no clearly established constitutional right to an entirely pork-free diet. The then controlling precedent in this jurisdiction guaranteed him "one full-course pork-free diet once a day" and only if "feasible from the standpoint of prison management." Barnett v. Rodgers, 410 F.2d 995, 1002 (D.C.Cir.1969)
 
 
 [5]
 Burns has not practiced law since before his confinement in the Jail on December 23, 1983. At the time the certification motion was denied he was incarcerated in a federal prison in Alabama, serving a 42-year sentence imposed after his conviction on narcotics charges
 
 
 [6]
 See, e.g., App. 348 (Leon Watts, testifying that he and other complaining inmates at the Jail "simply wanted a diet, a pork-free diet, or a supplement from the food that was being served"); App. 412 (Burns testifying he filed a complaint "requesting kosher food" ... [o]r in the alternative, a pork-free diet."); App. 415 (Burns testifying that "[w]e just filed for the pork-free diet.")
 
 
 [7]
 Rule 4(a)(4) has since been amended so that it now merely suspends the effect of a notice of appeal until disposition of the pending motions, and at least two circuits have applied this amendment retroactively. See Burt v. Ware, 14 F.3d 256 (5th Cir.1994) (per curiam); Leader v. National Ins. Co., 19 F.3d 44 (9th Cir.1994). Under either version of the rule, however, the district court retains jurisdiction to resolve the pending motions after the notice is filed
 
 
 [8]
 The offending "decisions" can consist of either "policies which affirmatively command that [the violation] occur" or "acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity." Jett, 491 U.S. at 737